James L. GREENE, Plaintiff,

v.

IOWA DISTRICT COURT for POLK COUNTY, Defendant.

No. 66200.

Supreme Court of Iowa.

Nov. 25, 1981.

William H. Michelson, Des Moines, for plaintiff.

Douglas Cleary, Friend of the Court, Des Moines, for defendant.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and SCHULTZ, JJ.

SCHULTZ, Justice.

In this certiorari action, plaintiff, James Leo Greene, challenges orders by the district court resulting from a 1977 court order finding him in contempt of court for nonpayment of child support. Plaintiff essentially alleges the district court erred in overruling his motion to dismiss the dissolution action from which the contempt order arose and to cancel (1) the assignment of a support judgment to the Iowa Department of Social Services, and (2) an order of commitment for contempt. We annul the writ.

As part of a dissolution of marriage decree entered June 24, 1975, plaintiff was ordered to pay $50 per month child support. Plaintiff became delinquent on his support obligation in the amount of $2970, however, and following a show-cause hearing held on November 18, 1977, was adjudged in contempt of court. The district court sentenced him to a thirty-day jail term but ordered the warrant of commitment withheld on the condition that he purge himself of contempt by assigning his 1977 federal and state income tax refunds to the Friend of Court Office and paying the clerk of court $75 per week for a period of one year. Plaintiff assigned his income tax refunds but at the end of the year he had incurred a delinquency of $630 on the required weekly payments.

On July 17, 1978, as a condition of receiving welfare benefits, plaintiff's former spouse, Anna L. Greene, assigned her right to support payments to the Iowa Department of Social Services. The instrument provided that the assignment included all of Anna's interest in all support payments to come due during the period she received assistance, whether paid before or after the termination of assistance. On August 14, 1980, Anna executed an agreement purporting to release plaintiff from any obligation for past-due child support. On September 1, 1980, the Department ceased paying Anna welfare benefits and executed a partial termination of assignment. The Department, however, reserved its right to any delinquency that had accrued as of that date.

Thereafter, the Friend of Court, citing plaintiff's failure to comply with the purgation conditions of the 1977 contempt order, filed an application for an order issuing the previously withheld warrant of commitment. On October 6, 1980, the district court ordered the requested warrant of commitment to be issued. Plaintiff then filed a motion to cancel the assignment of the support judgment and a motion to withhold the order of commitment. Following a hearing, the district court issued an order on October 22, 1980, withholding the order of commitment on the condition that plaintiff pay $50 per week toward the judgment assigned to the Department of Social Services, the amount of which was stipulated at $6205.

On October 24, 1980, plaintiff and Anna were remarried. On November 7, 1980, plaintiff filed a motion to dismiss the dissolution action and "all ancillary proceedings," alleging that the remarriage divested the district court of subject matter jurisdiction and vacated any child-support judgment. The district court overruled the motion on January 12, 1981, finding that it possessed subject matter jurisdiction. The following day plaintiff filed notice of appeal, which was subsequently amended to a petition for writ of certiorari. We granted the writ.

Plaintiff contends that: (1) the remarriage deprived the district court of subject matter jurisdiction to enforce the child-support judgment assigned to the Department of Social Services and to impose the thirty-day jail sentence for contempt of court; (2) the State cannot collect child-support arrearages as an assignee following termination of welfare assistance; and (3) the district court lacked authority to impose punishment for contempt of court for nonpayment of child support.

I. *Effect of remarriage.* Plaintiff maintains that the district court lost subject matter jurisdiction of the dissolution action when he and Anna were remarried. He therefore claims that the remarriage vacated the judgment for child support and prevents enforcement of the contempt sentence and prohibits the Department from proceeding to collect the delinquent child-support payments assigned to it by Anna. He cites *In re Marriage of Helm*, 271 N.W.2d 725 (Iowa 1978), and *Davis v. Davis*, 68 Cal.2d 290, 66 Cal.Rptr. 14, 437 P.2d 502 (1968), as support for these contentions.

There is a conflict of authority as to whether a dissolution decree becomes a nullity when the parties thereto remarry each other. In *Davis* the California Supreme Court followed several other jurisdictions in holding that remarriage nullifies the decree and terminates the jurisdiction of the court to enforce an order of child support. 68 Cal.2d at 290, 66 Cal.Rptr. at 15, 437 P.2d at 503. Other jurisdictions have refused to apply such a rigid rule, however. *See Travis v. Travis*, 227 Ga. 406, 409, 181 S.E.2d 61, 63 (1971) (remarriage of divorced spouses operates, at most, to relieve husband of further obligation to make installment payments of alimony, but does not affect accrued payments, which remain sole property of judgment holder); *Scheibel v. Scheibel*, 204 Neb. 653, 654, 284 N.W.2d 572, 573 (1979) (remarriage of parties will not operate as matter of law to prohibit holder of support order from instituting action to collect arrearage). *See also In re Marriage of Kaiser*, 568 S.W.2d 571, 573 (Mo.Ct.App. 1978) (remarriage after divorce does not restore marital community); 41 C.J.S. *Husband and Wife* § 263 (1944). In *Helm* we held that remarriage of the parties nullified the portion of the dissolution decree that granted custody of the children to one of the parties. The decision was based on a policy consideration—the best interests of the children. However, we recognized that the portion of the decree that gave custody of a child to a third party was not nullified by the remarriage. 271 N.W.2d at 727. We did not pass on the effect of a dissolution decree on a judgment for child support payments, whether assigned to a third party or not.

Although we do not depart from our holding in *Helm*, we decline to extend the *Davis* rule to a judgment for accrued installments of child support. The effect of

an award of child support is to provide the custodial parent with a money judgment. Each installment becomes a judgment when due. § 598.22, The Code; *see Cullinan v. Cullinan*, 226 N.W.2d 33, 35 (Iowa 1975). Accrued installments thus become the vested right of the spouse entitled to the support and may not be taken away. *In re Evans*, 267 N.W.2d 48, 52 (Iowa 1978).

We recently refused to nullify a judgment for temporary support ordered prior to the dismissal of a dissolution action. *Bork v. Richardson*, 289 N.W.2d 622, 625 (Iowa 1980). We held that the remedy of contempt for failure to pay the support was preserved. The rationale for this determination was stated as follows:

> A ruling in favor of the appellant here, denying enforceability of an order which was concededly valid when entered, would foster disregard for the courts and reward litigants who ignore their orders. We obviously are reluctant to encourage such attitudes.

*Id.* at 625. The reasoning in *Bork* is also applicable when the parties to a dissolution action remarry.

■ Furthermore, a valid assignment of a support judgment gives the assignee rights that cannot be affected by the former holder of the judgment without the assignee's consent. In *Broyles v. Iowa Department of Social Services*, 305 N.W.2d 718 (Iowa 1981), we recognized the right of the Department of Social Services to enforce a similar support judgment that had been assigned to it by a welfare recipient. *Id.* at 721. We construed the assignment to be effective until all delinquencies were paid and held invalid for lack of consideration a release by the judgment debtor's spouse. *Id.* at 723. And in *Helm* we refused to nullify that portion of the dissolution decree that granted custody to a third party. 271 N.W.2d at 727. Here, Anna assigned her right to support payments to the Department of Social Services for the period she received welfare assistance. Plaintiff's remarriage to Anna did not automatically terminate the rights of the Department, as the assignee of the support judgment.

■ Accordingly, we hold that the district court correctly ruled that it had subject matter jurisdiction to enforce the child-support judgment assigned to the Iowa Department of Social Services and to impose the previously ordered contempt sentence.

II. *Rights of Department of Social Services following termination of welfare benefits.* Plaintiff asserts that federal law bars the Iowa Department of Social Services from collecting child-support arrearages following the termination of welfare benefits. He relies on 42 U.S.C.A. § 657(c) (Supp. 1980), which provides in pertinent part:

> Whenever a family for whom child support payments have been collected and distributed under the plan ceases to receive assistance . . . the State may—
>
> (1) continue to collect amounts of child support payments which represent monthly support payments from the *absent parent* for a period of not to exceed three months . . . and pay all amounts so collected . . . to the family; and
>
> (2) at the end of such three month period, if the State is authorized to do so by the individual on whose behalf the collection will be made, continue to collect amounts of child support payments which represent monthly support payments from the *absent parent* and pay the net amount of any amount so collected . . . to the family . . . , and so much of any amounts of child support so collected as are in excess of the payments required to be made in paragraph (1) shall be distributed in the manner provided by subsections (b)(3)(A) and (B) of this section . . . .

(Emphasis added). Plaintiff contends that since he is no longer an absent parent, section 657(c) prevents the Department from collecting the assigned support judgment.

■ We have recognized the supremacy of federal law in cases involving Aid to Families with Dependent Children. *See Oberschachtsiek v. Iowa Department of Social Services*, 298 N.W.2d 302, 304–05 (Iowa 1980). Section 657(c) does not prohibit the

collection efforts of the Department in the present case, however. While we agree that, as shown by the italicized language, the provision applies only to an absent parent, it does not prevent the State from collecting an assigned child-support judgment from a parent who is no longer absent.

Welfare recipients are required by both federal and state law to assign their rights to periodic support payments to the State. *See* 42 U.S.C. § 602(a)(26)(A)(1976); § 598.34, The Code. 42 U.S.C. § 656(a)(1)(A)(1976), provides:

> The support rights assigned to the State under section 602(a)(26) ... shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation *shall be deemed for collection purposes to be collectible under all applicable State and local processes.*
>
> (1) The amount of such obligation shall be—
>
> (A) The amount specified in a court order which covers the assigned support rights ....

(Emphasis added). This provision is implemented by the following regulation:

> When a family ceases receiving assistance ... the assignment of support rights ... terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment. From this accrued amount, the [state] agency shall attempt to collect such unpaid obligation ...
>
> (1) Such collections shall be used to reimburse any amounts of past assistance which have not been reimbursed
>
> ....

45 C.F.R. § 302.51(f)(1) (1980). Accordingly, we find no merit in plaintiff's contention that federal law bars the Department of Social Services from collecting the child-support judgment at issue.

III. *Authority to impose contempt sentence.* The district court did not hold a show-cause hearing prior to ordering the issuance of the previously withheld warrant of commitment on October 6, 1980. Plain-tiff maintains that without a show-cause hearing the court did not have the power to impose the contempt sentence. He now claims: (1) he is entitled to a hearing to determine whether he willfully failed to meet the conditions of the 1977 contempt order; (2) he has purged himself of his previous contempt; and (3) contempt power may not be used when the payment of support will be used to reimburse the state for past welfare payments, rather than for actual support of the children.

Initially, we must determine whether this court possesses jurisdiction to decide this issue. Plaintiff originally challenged the validity and enforceability of the 1977 contempt order in a motion entitled "Motion for Withholding of Order of Commitment," which was filed October 17, 1980. On October 22, 1980, the district court overruled the motion and upheld the validity of the 1977 contempt order but ordered *mittimus* to be withheld on the condition that plaintiff pay $50 per week toward the judgment assigned to the Department of Social Services. More than eighty days after this ruling, on January 13, 1981, plaintiff filed notice of appeal, which was subsequently amended to a petition for writ of certiorari.

An appeal must be filed within thirty days from the entry of an order. Iowa R.App.P. 5(a). Likewise, "[n]o writ of certiorari shall issue or be sustained unless the petition is filed within thirty days from the time the inferior tribunal ... exceeded its jurisdiction or otherwise acted illegally." Iowa R.Civ.P. 319. An untimely appeal deprives the appellate court of subject matter jurisdiction, *Lutz v. Iowa Swine Exports Corp.*, 300 N.W.2d 109, 110 (Iowa 1981), as does an untimely petition for a writ of certiorari, *see* Iowa R.Civ.P. 319. We therefore hold that we do not have jurisdiction to review the propriety of the October 22, 1980, order. Accordingly, we will not address the merits of plaintiff's contention that the district court lacked authority to impose the contempt sentence; nor will we determine whether the district court had the power to withhold the imposition of the contempt sentence pending plaintiff's com-

pliance with prescribed conditions. *See State v. Wright*, 202 N.W.2d 72, 77 (Iowa 1972) (court has no power to suspend sentences or grant probation unless granted by statute); *State v. Voss*, 80 Iowa 467, 470, 45 N.W. 898, 898–99 (1890) (after finding of contempt and pronouncement of sentence, district court is without authority to suspend execution of sentence); § 598.23, The Code (willful disobedience of temporary order or final decree constitutes contempt and is punishable by thirty-day jail sentence or, alternatively, assignment of income). *But cf. Crary v. Curtis*, 199 N.W.2d 319, 322–23 (Iowa 1972) (plaintiff's punishment for contempt in violating decree ordered to be held in abeyance and plaintiff given opportunity to purge herself by subsequent good-faith compliance with decree).

On the issues of which we possess jurisdiction, plaintiff has failed to demonstrate that the district court exceeded its authority. We therefore annul the writ of certiorari.

WRIT ANNULLED.