In re the MARRIAGE OF Nila Jean ROOT and Robert James Root.

Nila Jean ROOT, Appellant,

v.

Robert James ROOT, Respondent.

No. 15881.

Missouri Court of Appeals,
Southern District,
Division One.

July 24, 1989.

Dan J. Pingelton, Columbia, for appellant.

James E. Baldwin and Mark E. Rector, Donnelly, Baldwin, Wilhite and Moore, Lebanon, for respondent.

CROW, Presiding Judge.

This appeal presents an issue of first impression in Missouri.

The marriage of Nila Jean Root ("Nila") and Robert James Root ("Robert") was dissolved June 8, 1984, by decree of the Circuit Court of Laclede County, Missouri. The decree awarded Nila custody of the parties' two minor children, and ordered Robert to pay Nila child support of $100 per month per child.

Robert failed to pay. Nila, aided by the Child Support Enforcement Unit, Division of Family Services, Missouri Department of Social Services, had two garnishments issued in 1986, and two more issued in 1987. Nila's request for the second of the two 1987 garnishments stated Robert owed $3,009.68 as of September 30, 1987.

Nila and Robert remarried each other January 19, 1988.

On March 2, 1988, Nila filed a petition for dissolution of the remarriage in the Circuit Court of Boone County, Missouri. On May 24, 1988, Nila requested the Clerk of the Circuit Court of Laclede County to issue an execution to collect an alleged arrearage of $3,809.68 child support owed her by Robert as of January 31, 1988, under the 1984 decree. Nila prayed that a garnishment be served on the registered agent of "Mid–American Dairyman, Inc.," in aid of the execution.

That was evidently done, as Robert subsequently filed a motion to quash the execution. On July 1, 1988, the Circuit Court of Laclede County heard evidence on Robert's motion, after which the court entered the following order:

"....

The Court ... finds that the prior order of this Court concerning [Robert's] obligation to pay child support for the minor children born of the parties has been negated and rendered null and void

by the subsequent remarriage of [Nila] and [Robert] on January 19, 1988 and that the jurisdiction of this Court over the parties and their minor children was terminated by the remarriage of January 19, 1988.

NOW, THEREFORE, IT IS ORDERED [that Robert's] ... Motion to Quash ... be and same is hereby sustained and the general execution issued herein is herewith set aside and is for naught held and said general execution is herewith recalled.

IT IS FURTHER ORDERED ... [that Robert] is herewith forever discharged and released from the money judgment heretofore rendered against [Robert] herein for the support of the minor children and said judgment is herewith declared fully satisfied.

...."

Nila appeals from the above order.[1] She maintains that her remarriage to Robert did not extinguish her claim for the unpaid child support that had accrued under the 1984 decree prior to the remarriage. She insists the trial court was wrong in holding that Robert, by reason of the remarriage, is discharged from the arrearages under the 1984 decree, and in declaring that Robert's child support obligation thereunder is fully satisfied.

No factually similar Missouri case has been cited by the parties, and our independent research has located none.

At the outset we observe that the $3,809.68 Nila seeks to collect represents child support arrearages under the 1984 decree that allegedly accrued prior to the remarriage. As recounted earlier, Nila's request for the second 1987 garnishment stated the indebtedness as of September 30, 1987, was $3,009.68. The 1984 decree provided that the child support was to commence on the date of that decree (June 8, 1984), and was payable monthly in advance. Under that provision four more installments of child support would have become due between September 30, 1987, and January 19, 1988, the date of the remarriage. Those installments would have totaled $800 which, added to the $3,009.68 allegedly owed as of September 30, 1987, makes $3,809.68, the amount of the execution quashed by the trial court. Nila, as we understand her, does not, in the instant action, seek to collect child support under the 1984 decree for any period commencing *after* the remarriage.

We also bear in mind that Nila launched her effort to collect the $3,809.68 only after she had instituted an action to dissolve the remarriage.[2]

Additionally, it should be noted that all of the installments Nila seeks to collect became due within ten years prior to the issuance of the garnishment, hence there is no presumption of payment under § 516.350.2, RSMo 1986.[3] There is likewise no need to consider whether the running of the ten-year period would be tolled for the duration of the remarriage.

Having marked the boundaries of the controversy we look for guidance to cases from other jurisdictions where parents have been divorced, have subsequently remarried each other, and issues regarding child support awarded by the divorce decree have thereafter arisen and been adjudicated. We have eliminated cases where spouses have been divorced, have subsequently remarried each other, and issues on matters other than child support have thereafter arisen and been adjudicated.

1. *Hardin v. Hardin,* 512 S.W.2d 851, 852–53[1] (Mo.App.1974), holds that an appeal lies from an order granting a motion to quash an execution and garnishment.

2. The legal file contains a decree dated August 31, 1988, dissolving the remarriage. That decree was entered, however, after the date of the order quashing the execution (July 1, 1988). We are consequently dealing in this appeal with a situation where Nila—while she was still Robert's wife by virtue of the remarriage, but during the time when she had an action pending to dissolve the remarriage—was attempting to collect child support arrearages allegedly owed by Robert under the 1984 decree dissolving the original marriage.

3. Section 516.350.2, RSMo 1986, reads: "In any ... decree awarding child support ... each periodic payment shall be presumed paid and satisfied after the expiration of ten years from the date that periodic payment is .due, unless the judgment has been otherwise revived...."

Cases in the latter category include *McDaniel v. Thompson,* 195 S.W.2d 202 (Tex.Civ.App.1946), dispute between surviving husband and siblings of deceased wife over real estate; *Jenkins v. Followell,* 262 P.2d 880 (Okla.1953), dispute over child custody, issue was whether court that had adjudicated custody in first divorce retained jurisdiction to modify custody order after parents had remarried and been divorced anew by different court and custody of child had been adjudicated in second divorce; *Warren v. Warren,* 213 Ga. 81, 97 S.E.2d 349 (1957), father awarded visitation rights with child in divorce decree, father and mother thereafter remarried and were later divorced again, and father subsequently sought sanctions against mother for denying visitation rights awarded in first decree; *Depper v. Depper,* 9 Ariz. App. 245, 451 P.2d 325 (1969), issue whether Arizona court retained jurisdiction to modify custody order in divorce decree where father, after divorce, married another woman and, while still wed to her, went through marriage ceremony with child's mother in another state, and mother thereafter obtained decree of divorce in third state purporting to award custody of child to mother. These four cases, and others, are cited in 26 A.L.R.4th 325, 332–33 (1983), in support of the proposition that where the parties to a divorce proceeding subsequently remarry each other the provisions of the original decree relative to support of children are nullified and rendered unenforceable. While that proposition, stated in various ways, was noted in *McDaniel,* 195 S.W.2d at 203, *Jenkins,* 262 P.2d at 882–83, and *Depper,* 451 P.2d at 327, it is manifest that no issue of child support was involved in any of the four cases discussed in this paragraph, consequently any comment on that subject in any of them was dictum.

Three other cases cited in the A.L.R.4th annotation did involve child support, but not child support that accrued between the parties' divorce and their subsequent remarriage.

*Davis v. Davis,* 68 Cal.2d 290, 66 Cal. Rptr. 14, 437 P.2d 502 (1968), cited in the annotation, involved a 1958 divorce which awarded the mother custody of two chil-

dren but no child support, as the father was outside the state and was served only by publication. The next year, by stipulation, the court ordered the father to pay child support of $100 per month per child. In 1960 the father and mother remarried each other. They subsequently separated and the mother obtained a divorce, but no child support as the father was outside the state. Later an order was entered by stipulation requiring the father to pay child support. The mother subsequently undertook to collect child support for the interval *between the separation that followed the remarriage and the second support order,* basing her action on the *first* support order. The trial court held the parties' remarriage terminated the first support order. Affirming, the Supreme Court of California said that the rule in other jurisdictions is that if the parties again intermarry, child custody and support orders as between themselves are thereupon terminated, as well as the jurisdiction of the court to enforce such orders, and this is true whether or not the parties subsequently divorce again. 66 Cal.Rptr. at 15[3], 437 P.2d at 503[3]. In support of that declaration the opinion cited, among other cases, *McDaniel* and *Jenkins* which, as we have seen, did not decide that issue.

While there are sound reasons supporting the holding in *Davis,* the facts there are unlike those before us. In *Davis* the mother was endeavoring to collect child support under the first order for a period commencing *after* the remarriage. It would be absurd to hold that once parents remarry each other and the family is again intact and residing in the same household, the former noncustodial parent must pay future installments of child support to the other parent per the past divorce decree. That is to say, the remarriage should terminate the former noncustodial parent's duty to pay any child support *that would have become due after the remarriage. Davis,* however, did not involve the situation we have here, where Nila is trying to collect child support that became due from Robert after the first dissolution and *during the period when Nila was a single parent*

*with custody of the parties' children.* The sum Nila seeks to collect was due her at the time of the remarriage; Nila does not, in this action, claim any child support is owed her for any period after the remarriage.

*Thomas v. Thomas*, 565 P.2d 722 (Okla. App.1976), also cited in the A.L.R.4th annotation, involved a 1970 divorce which awarded the mother custody of the parties' child and ordered the father to pay $50 per month child support. The parties thereafter resumed cohabitation which, according to the appellate court, became a common law marriage. They later separated and the father began paying the child support ordered by the decree, continuing to do so for some two years. In the meantime the mother married another man. In 1974 she sought to punish the father for contempt for failing, during the preceding 16 months, to comply with the support order in the decree. The appellate court held that the parties' remarriage terminated the jurisdiction of the trial court with respect to support of the child because the divorce was annulled and the rights and duties of the parties regarding the child were as if they had never been divorced. *Id.* at 724[3]. *Thomas*, like *Davis*, is dissimilar to the instant case in that the mother in *Thomas* was claiming child support for a period commencing after the remarriage.

Another case cited in the A.L.R.4th annotation is *Rasch v. Rasch*, 250 Miss. 885, 168 So.2d 738 (1964). There the parties separated in 1959; a court awarded the mother custody of the parties' child and ordered the father to pay the mother $50 per month child support, which he began paying. No divorce was granted. The parties subsequently reconciled and resumed cohabitation. Three years later the mother left, taking the child with her. She then sought to have the father held in contempt, alleging he had paid only $310 of the $2,400 that had accrued under the 1959 order. The trial court ruled for the father. The appellate court held that the resumption of the marital relationship and the continuation of that status for approximately three years, during which the child received its support as a member of the parents' household,

rendered the 1959 order inoperative. *Id.*, 168 So.2d at 743. The opinion stated the father was not required to continue to make the monthly support payments to the mother after the parties resumed marital relations. *Id.*, 168 So.2d at 744. The monthly payments required by the 1959 order were for the support of the child, and the father was not obliged to continue making them when the child was living in the father's home and being supported by him as a member of the family. *Id.*

We agree with *Rasch*, but it, like *Thomas* and *Davis*, did not present the circumstances of the instant case.

The only case cited by Robert that is factually similar to the instant case is *Ringstrom v. Ringstrom*, 101 Ill.App.3d 677, 57 Ill.Dec. 193, 428 N.E.2d 743, 26 A.L.R.4th 318 (1981). There the parties were divorced in 1971; the mother was awarded custody of their children, and the father was ordered to pay $150 per month child support. The parties remarried in 1977, and were divorced again the next year. The mother subsequently sought to collect alleged child support arrearages owed by the father under the first divorce decree for the period between entry of that decree and the remarriage. The Illinois appellate court stated that "the vast weight of authority from other jurisdictions" holds that upon remarriage of the parties to each other the prior divorce decree is annulled and rendered void. 57 Ill.Dec. at 194, 428 N.E.2d at 744. The court added that after remarriage the parties are restored to their rights as if they had never been divorced, and their relationship to the children and the duty to furnish support become exactly as they were before the divorce. *Id.* Upon the showing of remarriage, said the opinion, judgment for custody or for an amount for support of the children cannot be maintained based on the prior decree, as the court simply lacks jurisdiction to reexamine the prior decree. *Id.* As authority for those proclamations the opinion cited, among other cases, *Jenkins, Davis, Thomas,* and *Rasch,* all of which we have examined, and none of which were factually similar to *Ringstrom.*

The opinion in *Ringstrom* acknowledged that each case cited was "factually distinguishable from the instant case." *Id.*, 57 Ill.Dec. at 195, 428 N.E.2d at 745.

A result contrary to *Ringstrom* was reached in *Scheibel v. Scheibel*, 204 Neb. 653, 284 N.W.2d 572 (1979). The parties were divorced in 1958; the decree ordered the father to pay the mother $25 per month for support of the parties' child. The parties remarried in 1964, and were divorced anew in 1973. Unpaid child support of $1,875 had accrued between the 1958 divorce and the remarriage. The mother sought to collect it by execution; the trial court denied the father's motion to quash. On appeal the father maintained the claim was barred by the doctrine of laches. The Supreme Court of Nebraska rejected the father's contention, noting a lack of evidence that he was materially prejudiced by the mother's delay in asserting the claim. The opinion said:

> "The question is, then, whether the subsequent remarriage of parties operates as a matter of law, independent of any other circumstances, to automatically bar any action for child support not paid between the time of the first decree of divorce and the subsequent remarriage. We decline to so hold....
>
> In the absence of any evidence whatever that the [father] was materially prejudiced by the delay in the assertion of the claim for support, we decline to hold that the remarriage of the parties will operate as a matter of law to prohibit the party for whose benefit the support was ordered from instituting action to collect the arrearages." 284 N.W.2d at 573.

A similar result was reached in *Greene v. Iowa District Court for Polk County*, 312 N.W.2d 915 (Iowa 1981). There a 1975 decree of dissolution of marriage ordered the father to pay $50 per month child support. In 1977 he was adjudged in contempt for delinquencies, but was given an opportunity to purge himself by fulfilling certain requirements. The following year the mother, as a condition of receiving welfare benefits, assigned her right to future child support payments to a state social agency.

Officials thereafter undertook to enforce the 1977 contempt adjudication, averring the father had failed to satisfy the specified conditions. The father promptly remarried the mother, and then contended that the remarriage divested the trial court of subject matter jurisdiction and vacated any child support judgment. The trial court rejected the father's argument. The Supreme Court of Iowa held that the effect of an award of child support is to provide the custodial parent a money judgment. *Id.* at 917–18. Each installment becomes a judgment when due. *Id.* at 918. Accrued installments thus become the vested right of the party entitled to the support and may not be taken away. *Id.* The opinion continued:

> "We recently refused to nullify a judgment for temporary support ordered prior to the dismissal of a dissolution action. *Bork v. Richardson*, 289 N.W.2d 622, 625 (Iowa 1980). We held that the remedy of contempt for failure to pay the support was preserved. The rationale for this determination was stated as follows:
>
> > A ruling in favor of the appellant here, denying enforceability of an order which was concededly valid when entered, would foster disregard for the courts and reward litigants who ignore their orders. We obviously are reluctant to encourage such attitudes.
>
> *Id.* at 625. The reasoning in Bork is also applicable when the parties to a dissolution action remarry." 312 N.W.2d at 918.

The opinion in *Greene* went on to hold that a valid assignment of a support judgment gives the assignee rights that cannot be affected by the former holder of the judgment without the assignee's consent. *Id.* at 918[1]. Consequently, said the opinion, the father's remarriage to the mother did not automatically terminate the rights of the state agency as assignee of the support judgment. *Id.*

We recognize, of course, that there was an element in *Greene* that is absent in the instant case—the assignment to the state agency by the mother of her right to child

support under the dissolution decree. The holding in *Greene*, however, did not rest on the narrow ground that the agency's rights under the mother's assignment could not be impaired by her subsequent remarriage to the father. Citing, among other authorities, *Scheibel* and a Missouri case,[4] *Greene* squarely held that the parties' remarriage did not nullify the claim for accrued installments of child support. *Id.* at 917.[5]

An analogous case is *Travis v. Travis*, 227 Ga. 406, 181 S.E.2d 61 (1971), except that it involved alimony instead of child support. The parties were divorced; the decree awarded the wife permanent alimony, and she was deeded certain real estate per the decree. The parties subsequently remarried; the wife thereafter sued for divorce. The husband moved for declaratory relief annulling all provisions for permanent alimony in the earlier divorce and cancelling the deed. He based his prayer on a Georgia statute providing that the subsequent voluntary cohabitation of the husband and wife shall annul all provisions made, either by deed or decree, for permanent alimony. The Supreme Court of Georgia held that the wife could retain the property previously awarded her as permanent alimony regardless of her remarriage to her former husband. The opinion stated such conclusion was consistent with the general rule where there is no controlling statute, i.e., that a remarriage of divorced spouses operates at most to relieve the husband of further obligation to make installment payments of alimony. 181 S.E.2d at 63. The opinion added that property which, on the granting of a divorce, is set aside to the wife and becomes her sole and separate property remains in her separate estate, notwithstanding that she and her former husband subsequently remarry each other. *Id.*

*Travis* was cited in a Missouri case that reached the same result as to real estate conveyed to a wife per a property settlement agreement in a dissolution action: *In re Marriage of Kaiser*, 568 S.W.2d 571

(Mo.App.1978). There the parties filed a joint petition to dissolve their marriage, and simultaneously filed an agreement whereby the husband was to convey his interest in the marital home to the wife. A year after the dissolution the parties remarried each other. The wife subsequently brought an action to dissolve the remarriage alleging, among other things, that there was no marital property. The trial court so found. On appeal by the husband this Court stated the focal issue was whether the home the wife received in the first dissolution action became marital property by virtue of the remarriage. *Id.* at 573. The opinion held it did not, and affirmed the trial court. That holding implicitly rejected the theory that the remarriage nullified the first dissolution decree. Had the remarriage done so, the home would have automatically reacquired its character as marital property.

In *Barbara v. Charles*, 632 S.W.2d 92 (Mo.App.1982), a father moved to quash an execution and garnishment issued at the instance of a mother to collect alleged child support arrearages. He averred she had waived her right to enforce the judgment as to the sum in issue. The trial court denied the motion. On appeal this Court affirmed, holding that past due payments owing by the divorced father to the divorced wife pursuant to an order for child support incorporated into a dissolution decree constitute a debt of the father to his former wife so that accrued and unpaid installments become judgments in her favor. *Id.* at 93[1].

At the time Nila remarried Robert, she, according to her calculations, was owed $3,809.68 by him in unpaid child support. Nila was, as to that sum, a judgment creditor of Robert. The trial court held that the child support order in the 1984 decree was negated and rendered null and void by the remarriage, and that Robert was discharged and released from that judgment. Of all the cases we have examined from other jurisdictions, only *Ringstrom* reaches

---

**4.** *In re Marriage of Kaiser*, 568 S.W.2d 571 (Mo. App.1978), which we shall discuss *infra*.

**5.** For later developments in *Greene* see *Greene v. District Court of Polk County*, 342 N.W.2d 818 (Iowa 1983).

the same result on like facts. *Scheibel* and *Greene* hold, contrary to *Ringstrom*, that remarriage does not bar the mother from collecting child support arrearages that accrued between the divorce and the remarriage.

We believe *Scheibel* and *Greene* are better reasoned than *Ringstrom*. Accordingly, we hold that the trial court erred as a matter of law in the instant case by ruling that the remarriage discharged Robert from liability to Nila for child support arrearages that accrued between the 1984 dissolution and the remarriage.

■ Having determined that Nila's claim as a judgment creditor of Robert for child support owed at the time of the remarriage was not nullified or extinguished by the remarriage, the next question we confront is whether Nila is barred from collecting the arrearages during coverture.

In *Hamilton v. Fulkerson*, 285 S.W.2d 642 (Mo.1955), a woman sued a man for alleged personal injuries resulting from his negligent operation of an automobile in which she was a passenger. Two days after filing suit she married him. At that time the common law of Missouri was that an action for a personal tort committed by a husband against a wife *during coverture* could not be maintained. *Id.* at 643[1]. On motion by the man, the trial court dismissed the suit.

On appeal the Supreme Court of Missouri noted that § 451.250, RSMo 1949, provided:

"... any personal property, including rights in action, belonging to any woman at her marriage ... shall ... be and remain her separate property and under her sole control, ... and any such married woman may, in her own name and without joining her husband, as a party plaintiff institute and maintain any action, in any of the courts of this state having jurisdiction, for the recovery of any such personal property, including rights in action, as aforesaid, with the same force and effect as if such married woman was a femme sole...."

The Supreme Court stated that "rights in action" as used in the statute included any

cause of action which was the property of the wife at the time of her marriage. *Id.* at 644[2]. Consequently, § 451.250 abrogated the common law rule (assuming one existed) that marriage extinguished any claim a woman had against a man for a personal tort committed by him against her prior to their marriage. *Id.* at 645. The Supreme Court further held there were no logical public policy reasons for barring actions between spouses for personal torts that occurred prior to marriage. *Id.* at 646. The trial court's order of dismissal was reversed and the cause was remanded.

If, as held in *Hamilton*, a wife can sue her husband for a personal injury tortiously inflicted on her prior to their marriage, we perceive no reason why Nila should be barred from utilizing execution and garnishment to collect from Robert the child support he owed her at the time of the remarriage, particularly where, at the time Nila began her collection effort, the parties were estranged and Nila had an action pending against Robert to dissolve the remarriage.

In *Hamilton* the issues of liability and damages would, of course, have to be litigated during coverture, while in the instant case Robert's liability to Nila for child support was fixed at a specific amount by the 1984 dissolution decree some 43 months prior to the remarriage. Obviously there are fewer issues to be adjudicated between Nila and Robert in the instant case than there were between the spouses in *Hamilton*.

We therefore hold that Nila's status as Robert's wife did not bar her from pursuing her remedies as a judgment creditor to collect the child support that had become due her during the period between the 1984 dissolution and the remarriage. The trial court's order quashing the execution must, accordingly, be reversed and the cause must be remanded to the trial court for further proceedings.

In so deciding we have not overlooked Robert's allegation in the trial court that the past due child support was "previously settled or compromised" by the parties or

that Nila "acquiesced" in the nonpayment, thereby constituting a waiver of any claim for accrued support. The trial court found there was no evidence of any compromise or settlement. That finding is amply supported by the record; Robert does not argue otherwise. Nila's persistent efforts to collect the child support prior to the remarriage conclusively refute any claim of acquiescence or waiver. The execution and garnishment, consequently, are not vulnerable to any of Robert's attacks.

There are, however, issues that remain to be resolved. An obvious one is the amount of child support owed Nila, as of the date of the present execution and garnishment, for the period between the 1984 dissolution and the remarriage. While Nila claims it is $3,809.68, Robert testified he had made some payments, and there was evidence that certain sums had been collected by earlier garnishments. The trial court made no finding on the amount of the arrearage, as the trial court did not reach that issue.

Another problem that may arise on remand is whether Nila's claim is now impaired by the separation agreement between her and Robert approved in the decree entered August 31, 1988, by the Circuit Court of Boone County dissolving the remarriage.[6] That matter, of course, was not before the trial court when it granted Robert's motion to quash, as the separation agreement had not been executed at that time. It is consequently not before us in this appeal.

The trial court's order quashing the execution is reversed, and the cause is remanded for further proceedings consistent with this opinion.

HOLSTEIN, C.J., and GREENE, J., concur.