[No. G045728. Fourth Dist., Div. Three. July 5, 2012.]

In re the Marriage of MARK O. WILSON and TAMARA S. BODINE.
MARK O. WILSON, Appellant, v.
TAMARA S. BODINE, Respondent.

**COUNSEL**

Brian G. Saylin for Appellant.

No appearance for Respondent.

**OPINION**

**O'LEARY, P. J.**—Mark O. Wilson (Father) and Tamara S. Bodine (Mother) had a child prior to their marriage. The sole issue presented in this appeal is what effect, if any, does the act of marriage have on a prior child custody support order entered in a paternity action when the child's parents were unmarried. The trial court ordered Father to pay child support arrearages for a period of time before the marriage, and also for a period of time after Father and Mother separated as married persons. Father appeals the latter portion of the order, asserting it was legal error for the court to rule the marriage did not extinguish the right to child support. We conclude the paternity order was nullified (not extinguished or abated) when Father married Mother. The support order is reversed in part and the matter is remanded for the trial court to calculate the exact sum of arrearages incurred prior to the marriage.

I

Mother and Father were unmarried when their son, J.W., was born in August 2001. In July 2002, Mother obtained a child support order based on a voluntary declaration of paternity (hereafter the Paternity case).[1] The court construed the declaration of paternity as a judgment of paternity and recognized it as the basis for making child custody, visitation, and support orders. The court awarded Mother sole legal and physical custody of J.W. and granted Father reasonable visitation. Father was ordered to pay $1,600 monthly child support.

---

[1] On our own motion, we took judicial notice of the entire trial court file in the Paternity case and the martial dissolution case, and viewed them electronically, to have a more complete picture of the status of the case. (Evid. Code, § 452, subd. (d).)

Mother and Father's daughter, G.W., was born in June 2003. The parents married on December 31, 2005, and separated two years later on January 30, 2008. Mother filed a petition for dissolution of marriage on March 17, 2008, and Father filed a response in April 2008 (hereafter the Divorce case). The matter was bifurcated and on January 30, 2009, the court entered a status only dissolution judgment.

On June 17, 2010, Father filed an ex parte order to show cause (OSC) in the Paternity case seeking modification of child support and a determination of arrears. In his declaration, Father stated the Department of Child Support Services (DCSS) told him he owed over $150,000 in arrears, which included the time he was living with and married to Mother. He noted they currently shared a 50 percent time-share with both children, and he asked the court to determine child support based on the current custody arrangement.

Mother filed a response, asserting Father owed somewhere between $85,000 and $90,000 in child support arrears for the period of March 1, 2002, through July 23, 2010. Mother explained she obtained the paternity child support order in 2002, after Father refused to help provide for his son, despite making over $85,000 a year. She declared Father did not pay the full amount of the child support order in 2002 or 2003 when they lived apart. Mother said she gave credit to Father for having paid support while they lived together and then subsequently married from October 2005 to January 2008.

A hearing was set for July 29, 2010. On that day the court found Father owed $1,600 per month for the period of March 1, 2002, to June 30, 2003. The court reserved the issue of retroactivity to July 2010 (i.e., the amount of arrearages for the period of separation after the marriage) and continued the matter to October 28, 2010.

Meanwhile in the Divorce case, on September 1, 2010, the court signed and entered a partial final judgment resolving the issues of custody, visitation, and property division based on the parties' stipulation. The parties agreed to joint legal custody and to equally share physical custody of the children. Father and Mother waived any rights to spousal support. The court ordered Father to make an equalization community property payment of $25,000 at the rate of $250 per month. The issue of child support was reserved.

On October 28, 2010, the court held a hearing on the issue of child support. The court noted the Paternity case and the Divorce case were being "related for hearing purposes." The parties and the DCSS were represented by counsel.

At the hearing, the parties discussed the 2002 paternity child support order. Mother's counsel acknowledged the support order was "abated" from July

2003 to January 2008 because the parties were living together and Father was providing support by having the child in his home. Mother clarified the issue was whether support was owed after the date of separation in February 2008 to the present. She also requested the court determine support arrears for the period of July 2002 (when she obtained the support order) to September 2003 (the month before they moved in together). Counsel for DCSS did not take a position on any of the issues, stating DCSS only sought clarification from the court.

Father argued that following their separation the parents shared physical custody of the children, and the guideline child support would only be $42. He argued the 2002 child support order of $1,600 was based on Mother having 100 percent physical custody and was extinguished by the marriage. Mother responded the 2002 paternity support order was in full force and effect as a matter of law until further order of the court, the child's emancipation, the child's attainment of majority, or the child's death. She noted none of these events had occurred.

Both parties discussed at length our Supreme Court's opinion *Davis v. Davis* (1968) 68 Cal.2d 290 [66 Cal.Rptr. 14, 437 P.2d 502] (*Davis*). In that case the parties were married, obtained a dissolution judgment providing for child support, remarried, and then dissolved the second marriage. (*Id.* at pp. 290–291.) The court held the remarriage extinguished the child support order entered in the first divorce action. (*Id.* at p. 292.) The court held the child's mother could not collect support payments for the 36-month period between the separation that followed the remarriage and a second child support ordered entered in the second divorce action. (*Id.* at pp. 292–293.) Father argued this case was exactly on point. Mother disagreed and maintained paternity orders should be treated differently than divorce decrees.

At the end of the hearing, the trial court entered a temporary child support order that Father pay Mother $42 per month. It reserved the issue of retroactivity of the child support obligation. The court ordered Father to pay $250 per month on the arrears accrued in the Paternity case (but did not calculate the total sum owed). The parties were ordered to provide new income and expense declarations as well as paycheck stubs.

The next hearing on child support was held on April 21, 2011. The trial court determined the *Davis* case was not controlling. On the record and in its minute order the court stated, "This court is persuaded that the child support order made as a result of the paternity action remains even after the marriage." The court determined it retains jurisdiction over the paternity child support order "until the child reaches 18 [years old], or the order is modified by the court or [the child] graduates high school and is over 19." The trial

court ruled Mother could seek arrears from the date of separation until June 2010 (when Father filed an OSC seeking modification of the 2002 support order).

At the hearing, the court also considered whether there should be ongoing child support between the parties now sharing joint physical custody with a 50 percent time-share. The court considered Mother's testimony and the income and expense declarations. It took the matter under submission stating it would make two separate determinations of child support: (1) from July 2010 to the end of the year, and (2) from January 2011 to the present. Father's counsel requested a statement of decision.

On July 18, 2011, the court prepared a statement of decision and issued its ruling on child support. The court again explained the *Davis* case was inapplicable because it involved a married couple and that "court denied the mother's request for arrearages between the time of the first divorce and the remarriage." The trial court determined this case was different because it involved "unmarried parents who lived together on and off, then married and separated thereafter." It reasoned the *Davis* court relied on out-of-state authority to hold "the remarriage had extinguished the prior support orders from the first divorce, stating 'remarriage of the parties generally terminates a divorce court's jurisdiction over the parties and their minor children.' Unlike *Davis*, there is no [marital] dissolution terminating jurisdiction. [¶] The child support order of 2002 was made pursuant to a petition for paternity, custody and support. Pursuant to Family Code section 3901 [subdivision] (a), the duty of child support continues to 'unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first.' A valid order was made in 2002 and the duty to comply with that order was not extinguished by the 2005 marriage."

Furthermore, the court explained why it rejected Father's argument he was not responsible for child support after 2008 because J.W. was in his physical custody at least 50 percent of the time. It stated, "The court finds this would constitute a retroactive modification of support." The court noted support arrearages may be forgiven during the time the child is in the sole custody of the obligor parent (e.g., *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072 [261 Cal.Rptr. 36]), but in this case there was no change in sole custody from Mother to Father. It concluded retroactive support modification would be inappropriate. And finally, the court refused to award Father equitable relief from his responsibility under the earlier order. It explained, "The evidence fails to show that he substantially met or exceeded his responsibilities under the 2002 [child support] order. This court exercises its discretion against granting equitable relief. [Father] failed to comply with the 2002 order. The court finds [he] comes before the court with unclean hands."

The court stated its ruling on the child support for 2010 and 2011 were contained in the attached California guideline calculator (CGC). It added, Father must pay "$100 per month on undetermined arrears commencing August 1, 2011."

The attached CGC forms stated Mother was required to pay Father $500 per month in support for the 2010 tax year, and $123 per month for the 2011 tax year. We found nothing in the record, and Father fails to cite to any document, showing the court ruled the total amount of arrears owed from (1) July 2002 to September 2003 (before the couple's marriage) or (2) from January 2008 to July 2010 (after the marriage). On appeal, Father challenges the arrears relating to the period *after* he, as a married person, separated from Mother.

## II

Did Father's marriage to Mother nullify the support provisions of the prior paternity decree? While no California case has considered this exact question, Father relies upon a decision he claims is closely analogous, involving a divorced couple who remarried each other and subsequently sought a divorce. (*Davis, supra,* 68 Cal.2d at p. 292.) The rule announced by the Supreme Court in that opinion is the same rule developed in other jurisdictions, that in the case of divorced parents who remarry each other, their remarriage nullifies the divorce court's order for child custody and future installments of child support. (*Id.* at p. 290; see *Greene v. Iowa Dist. Court* (Iowa 1981) 312 N.W.2d 915; *In re Marriage of Root* (Mo.Ct.App. 1989) 774 S.W.2d 521 (*Root*); *Scheibel v. Scheibel* (1979) 204 Neb. 653 [284 N.W.2d 572].)

"The rationale for the rule is that if the parties to a divorce decree remarry each other, they no longer have separate rights of custody and separate obligations for future support; rather, the same joint rights to custody and joint obligations for future support which antedated the divorce are resumed. [Citations.] In *Root . . . , supra,* 774 S.W.2d at [page] 523, the Missouri Court of Appeals aptly explained: 'It would be absurd to hold that once parents remarry each other and the family is again intact and residing in the same household, the former noncustodial parent must pay future installments of child support to the other parent per the past divorce decree. That is to say, the remarriage should terminate the former noncustodial parent's duty to pay any child support that would have become due after the remarriage.' " (*Schaff v. Schaff* (N.D. 1989) 446 N.W.2d 28, 31 (*Schaff*).) The remarriage of parties to a divorce *nullifies* the prior divorce decree with respect to child custody and support. (*In re Mitchell* (2001) 319 Ill.App.3d 17 [253 Ill.Dec. 393, 745 N.E.2d 167, 170], citing *In re Marriage of Parks* (1994) 258

Ill.App.3d 479 [196 Ill.Dec. 574, 630 N.E.2d 509, 511] [prior decree is not "void," but merely unenforceable].)

In the *Davis* opinion, the Supreme Court agreed with out-of-state authority holding, "if the parties again intermarry child custody and support orders as between themselves are thereupon terminated, as well as the jurisdiction of the court to enforce such orders, and that this is true whether or not the parents subsequently divorce again." (*Davis, supra*, 68 Cal.2d at p. 292.) It reasoned a court's jurisdiction over custody and support continues after a divorce decree, but if the parties remarry they no longer have separate rights of custody and " 'the basis for the court's further jurisdiction ceases.' " (*Id.* at p. 293.) However, the court also cautioned, both parents continue to have a duty to support their children: "[P]arents are under a continuing legal duty to support their minor children independently of the marriage status." (*Id.* at p. 291.)

In the case before us, the trial court determined a distinction should and could be drawn between the effect on a paternity judgment of the child's parents' subsequent marriage to each other and the effect on a divorce decree on the parents' subsequent remarriage to each other. It reasoned that unlike a family court's limited jurisdiction over a divorce decree, the court's jurisdiction to enforce a paternity order does not cease as a matter of law until the child "has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first." (Fam. Code, § 3901, subd. (a).)[2] It found no authority holding a parent's marriage to the child's biological parent affects the court's jurisdiction. Moreover, the court noted Father could have filed an OSC to abate or extinguish the obligation due his level of support (or stated another way, satisfaction of the support obligation) occurring as a natural result of the marriage. Because Father waited until July 2010 to file anything in the Paternity case, the court held the paternity order would remain in effect until that date.

A nationwide search reveals there is but a small body of legal authority regarding nullification of prior child support orders. In Father's briefing below (and on appeal), he failed to discuss a well-reasoned decision by the Supreme Court of North Dakota (*Schaff, supra*, 446 N.W.2d at p. 32) that cited the California Supreme Court's *Davis* opinion and concluded no distinction should be drawn between the effect marriage has on a paternity decree versus a divorce decree of child support. The facts of *Schaff* are similar to the case at hand. The parties in the *Schaff* case had a child prior to their marriage. (*Schaff, supra*, 446 N.W.2d at p. 29.) A paternity judgment was entered against the father, and he was ordered to pay child support (in

---

[2] All further statutory references are to the Family Code, unless otherwise indicated.

the form of a lump-sum annuity payment that specified it could not be modified or revoked). (*Ibid.*) Sometime later the couple married, and the child continued to receive her annuity support payments but turned the money over for payment of family expenses. (*Ibid.*) During a subsequent divorce proceeding, issues involving the previous child support order were raised. Specifically, the mother sought additional child support above the amount ordered in the paternity decree. (*Id.* at pp. 29–30.)

The *Schaff* court determined the factual scenario before it was like that of divorced parents who remarry each other. The court recognized that "[g]enerally, when divorced persons remarry each other, their remarriage nullifies the divorce court's order for child custody [citation], and future installments of child support. [Citations.]" (*Schaff, supra*, 446 N.W.2d at p. 31, fn. omitted.) The court reasoned, "if the parties to a divorce decree remarry each other, they no longer have separate rights of custody and separate obligations for future support; rather, the same joint rights to custody and joint obligations for future support which antedated the divorce are resumed." (*Ibid.*)

In holding the same rule should apply to paternity judgments, the court relied on several points of law. First, it noted well-established law that "married parents and parents of children born out-of-wedlock have an equal right to custody and a mutual duty of support of their children." (*Schaff, supra*, 446 N.W.2d at p. 31.) Next, it observed the Uniform Parentage Act (the Act) (N.D. Cent. Code, chs. 14–17) was intended to establish the rights and liabilities of parents of children born out of wedlock. (446 N.W.2d at pp. 31–32.) In a paternity action under the Act, the court may enter a judgment determining each party's separate rights and liabilities for custody and support and the same is true of a court entering a judgment in a divorce action. (446 N.W.2d at pp. 31–32.)

Based on the above legal authority, the *Schaff* court concluded, "We are not persuaded that there is a reasonable distinction to be drawn between the effect on a paternity judgment of the child's parents' subsequent marriage to each other and the effect on a divorce decree of the divorced parents' subsequent remarriage to each other. The paternity action, as well as the divorce action, each involves a determination of the separate rights and liabilities of parents for their children. While a paternity action and a divorce action establish the *separate* rights and liabilities of parents, those parents' subsequent marriage or remarriage establishes anew the parents' *joint* rights and liabilities for custody and support of their children replacing their former separate rights and liabilities. We believe that the rationale of the divorce cases regarding the

resumption of joint rights to custody and joint obligations for future support upon remarriage should govern this case. Accordingly, we hold that *when parents of a child born out-of-wedlock marry each other, the child custody and future support provisions of the paternity judgment are nullified and replaced by the law governing the rights and obligations of married parents to their children*. If those parents subsequently seek a divorce, the divorce laws are then applicable to the determination of child custody and support." (*Schaff, supra*, 446 N.W.2d at p. 32, third italics added & fn. omitted.)

■ We conclude this well-reasoned opinion is applicable to our case, applying California's statutory scheme. As in North Dakota, the Act (§ 7600 et seq.) provides the statutory framework by which California courts make paternity determinations. (§ 7570 et seq.) In California, paternity actions, like divorce actions, involve a determination of the separate rights and liabilities of parents for their children. The marriage or remarriage by those parents automatically creates joint rights and liabilities for custody and support of the child and extinguishes any preexisting order of child support entered for the child's benefit. Upon the termination of the marriage or a second marriage between the parents, custody and support issues will be visited anew. (§§ 3600, 4001; *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1326 [16 Cal.Rptr.3d 489] (*Wittgrove*) ["Pending a marriage dissolution or legal separation action where there is an issue of support of a minor child, the court may order either or both parents to pay 'any amount necessary for the support of the child . . . .' "].) The dissolution legal proceedings have built-in protections for the best interests of the child. (*Wittgrove, supra*, 120 Cal.App.4th at p. 1326 [in implementing statewide uniform guidelines for child support under section 4053, the court's "main concern is the child's best interests"].) Thus, the child will not be harmed by the fact that an earlier child support order was terminated upon the marriage or remarriage of the parents.

■ In conclusion, we reverse the trial court's order that Father must pay arrearages for the period from January 2008 to July 2010 based on the prior paternity order. As stated in the *Davis* case, Father still had an obligation to support his children during this time period and on remand the trial court must evaluate whether Father satisfied his parental obligation. We affirm the trial court's order that Father pay arrearages for the period of time before his marriage, when he fell short on his obligation to J.W. (from July 2002 to Sept. 2003). Father does not dispute this aspect of the court's order, and we conclude it was properly based on the 2002 paternity order. However, the court's order does not indicate the amount of arrearages owed. On remand, the court must calculate this amount of arrearages.

## III

The order requiring payment of arrears is affirmed in part and reversed in part and remanded for further proceedings in accordance with this opinion. In the interest of justice, each party shall bear its own costs on appeal.

Moore, J., and Fybel, J., concurred.