No. 2--00--0005  
 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

In re
 Marriage of ) Appeal from the Circuit Court

ELENA M. MITCHELL, n/k/a ) of De Kalb County.

Elena M. Bloomingdale,          )

)

Petitioner-Appellant,      )

            ) 

and ) No. 99--D--25

                )

KEVIN R. MITCHELL,                     ) Honorable      

                                )  Kurt P. Klein, 

Respondent-Appellee.       )  Judge Presiding.

_________________________________________________________________ 

JUSTICE RAPP delivered the opinion of the court:

Petitioner, Elena M. Mitchell, now known as Elena M. Bloomingdale, appeals the circuit court's order dissolving her marriage to respondent, Kevin R. Mitchell.  Petitioner contends that the court erred by (1) refusing to award her the full amount of child support arrearages respondent allegedly owed; and (2) refusing to order respondent to exercise his visitation with the parties' children.

This was the second time the parties were married to each other.  In April 1991, the circuit court of Ogle County dissolved their first marriage.  The decree awarded custody of the parties' two children to petitioner and ordered respondent to pay $73 per week as child support.

On February 14, 1992, the parties remarried each other.  They apparently separated in May 1994.  In 1999, petitioner sought to dissolve the second marriage.  The parties agreed to transfer the Ogle County case to De Kalb County and consolidate it with this case.  The court again awarded custody of the children to petitioner and ordered respondent to pay $96.60 per week as child support.

Petitioner claimed a child support arrearage of more than $20,000.  This figure included allegedly overdue payments pursuant to the Ogle County decree of $73 per week until March 16, 1999, and $96.60 per week after that date.  The court found an arrearage of $4,864.60.  This amount included payments pursuant to the Ogle County decree until the parties' remarriage on February 14, 1992, as well as past-due payments under the current decree.

The court denied petitioner's motion to require respondent to exercise his visitation with the children.  Instead, the court ordered respondent to pay for day-care costs when he did not exercise visitation.  Petitioner filed a timely notice of appeal.

Petitioner first contends that the trial court erred in finding that child support did not continue to accrue pursuant to the Ogle County decree during the parties' second marriage.  Petitioner points out that child support payments become a vested right of the receiving spouse as they become due and a court cannot modify them retroactively.  Thus, because no petition to modify child support was ever filed, the payments pursuant to the Ogle County decree continued to accrue.  Petitioner further maintains that the public policy of assuring that children of divorced parents are provided with adequate support is so strong that even the parties' remarriage to each other should not be able to terminate the respondent's support obligation.

We note that respondent has not filed a brief in this court.  However, we will consider the 
merits of the appeal under the standard set forth in 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128 (1976).

Preliminarily, we note that the trial court awarded petitioner an arrearage for child support payments that accrued prior to February 14, 1992, the date of the parties' remarriage.  Respondent has not filed a cross-appeal to contest this ruling.  Moreover, petitioner does
 not dispute the amount of the arrearage.  
Also, the parties do not question the propriety of combining the arrearages due from the first dissolution action and the temporary support order entered in this case and awarding both in a single order.  Thus, we do not consider these issues.

It appears that the precise issue petitioner raises--whether child support ordered by a dissolution decree continues to accrue after the parties remarry each other--is one of first impression in Illinois.  In 
Davis v. Davis
, 68 Cal. 2d 290, 437 P.2d 502, 66 Cal. Rptr. 14 (1968), the California Supreme Court rejected this contention, holding that the wife could not enforce the child support provisions of a prior divorce decree  as to payments that accrued after the parties remarried each other.  
Davis
, 68 Cal. 2d at 291, 437 P.2d at 502-03, 66 Cal. Rptr. at 16.  The court noted that this holding was consistent with the goal of reestablishing the family unit for the benefit of both the parties and the children.  
Davis
, 68 Cal. 2d at 293, 437 P.2d at 504, 66 Cal. Rptr. at 16; see also 
Griffis v. Griffis
, 202 W. Va. 203, 215, 503 S.E.2d 516, 521 (1998) (parties' remarriage automatically terminated future child support installments but did not nullify arrearage for payments past due at time of remarriage).

Petitioner does not cite 
Davis
 or 
Griffis
, but argues that the trend of recent cases is to reject the conclusion that a prior divorce or dissolution decree becomes unenforceable after the parties to it remarry each other.  To resolve this issue, we must examine those cases in some detail.

In 
Ringstrom v. Ringstrom
, 101 Ill. App. 3d 677 (1981), the Fourth District reiterated the well-established principle that when divorced parties remarry each other the prior decree is void.  
Ringstrom
, 101 Ill. App. 3d at 679.  The court went on to hold that, upon their remarriage, the parties are restored to their rights as if they had never been divorced.  
Ringstrom
, 101 Ill. App. 3d at 680-81.  As a result, the wife could not collect even support payments that had become due prior to the remarriage.  
Ringstrom
, 101 Ill. App. 3d at 679.

In re Marriage of Parks
, 258 Ill. App. 3d 479 (1994), the court attempted to clarify 
Ringstrom
's holding.  The specific issue there was the husband's obligation pursuant to the first decree to pay the wife $5,000 as maintenance in gross.  The court stated that a careful reading of 
Ringstrom
 revealed the holding to be that the prior decree is not "void," but merely unenforceable.  
Parks
, 258 Ill. App. 3d at 482.  The court noted that most of the earlier reported cases involved issues of child custody and support and deemed it "sensible that the remarriage of parties to a divorce nullif[ies] the prior divorce decree with respect to child custody and child support."  
Parks
, 258 Ill. App. 3d at 483.  The court explained that in the case of child support, "upon the remarriage of the parties, they are restored to their rights and obligations as if never divorced, and there is no further obligation to pay child support under the divorce decree."    
Parks
, 258 Ill. App. 3d at 483.

Parks
 held that issues involving maintenance and property rights were different and, as to those issues, the parties' subsequent remarriage merely rendered unenforceable the prior decree.  Thus, "with respect to provisions of the divorce decree which have not been fully executed, upon remarriage of the parties, no action may be brought to enforce those provisions."  
  
Parks
, 258 Ill. App. 3d at 484.  Such a result was appropriate, the court said, to prevent parties "who have chosen to begin marriage anew from squabbling in court about their respective failings under the prior divorce decree."  
Parks
, 258 Ill. App. 3d at 484.  The court did state, however, that its holding did not necessarily preclude the wife from raising the issue in the second divorce action, which apparently was pending under another case number.  
Parks
, 258 Ill. App. 3d at 485.

Because 
Parks
 involved alimony in gross, the court had no reason to distinguish between installments of support or maintenance that were due to be paid 
before
 the remarriage and those that were not due until 
after
 the remarriage.  In 
In re Marriage of Root
, 774 S.W.2d 521 (Mo. App. 1989), the court squarely faced this distinction.  Noting that state law deemed overdue child support payments a judgment in favor of the receiving spouse, the court held that the trial court erred in barring the wife from collecting child support installments that had become due before the parties remarried each other.  
Root
, 774 S.W.2d at 527.

In discussing earlier cases, 
Root
 distinguished 
Davis
 but clearly approved of its holding that the wife could not recover support installments that would have been due after the remarriage.  The court stated:

"It would be absurd to hold that once parents remarry each other and the family is again intact and residing in the same household, the former noncustodial parent must pay future installments of child support to the other parent per the past divorce decree.  That is to say, the remarriage should terminate the former noncustodial parent's duty to pay any child support 
that would have become due after the remarriage
."  (Emphasis in original.)  
Root
, 774 S.W.2d at 523.

In 
Schaff v. Schaff
, 446 N.W.2d 28 (N.D. 1989), the parties to a paternity decree subsequently married.  The court treated the paternity case as equivalent to a prior divorce action between the parties and held that their marriage nullifed the prior decree, at least as to future installments of child support.  
Schaff
, 446 N.W.2d at 31.  The court explained the rationale that parties who marry no longer have separate rights of custody or support and recited the above-quoted passage from 
Root
.  
Schaff
, 446 N.W.2d at 31.  In a footnote, the court referred to the conflict between 
Root
 and 
Ringstrom
 regarding support installments accruing before the remarriage, but declined to resolve the issue because the wife was not making a claim for past-due support.  
Schaff
, 446 N.W.2d at 31 n.5; see also
 
Griffis
, 202 W. Va. at 214, 503 S.E.2d at 521.

It is thus true, as petitioner argues, that 
Root
 "rejected 
Ringstrom
," but only to the extent that 
Ringstrom
 held that the wife could not recover support installments that accrued before the remarriage.  We agree with 
Davis
, 
Root
, 
Schaff
, and 
Griffis
 that it would be undesirable to hold that parties to a divorce decree who later remarry may continue to enforce provisions of the prior decree against each other.  All of the above cases, despite their sometimes discordant holdings, make clear that parties, once married, can thereafter either be married to each other or divorced from each other; they cannot be both at the same time.  Parties who choose to remarry cannot continue to enforce selected provisions of the prior decree relating to child custody and support.  To do so would inevitably create friction in the marriage, and any attempt by a court to enforce such a right would likely be viewed as an unwarranted governmental interference in the marital relationship.

Petitioner observes, however, that Illinois law provides that past-due child support payments are a vested right of the receiving spouse (
In re Marriage of Johnson
, 106 Ill. App. 3d 502, 512 (1982)) that cannot be modified by the court retroactively (
In re Marriage of Henry
, 156 Ill. 2d 541, 544 (1993)).  This merely begs the question because calling something a vested right implies the existence of an enforceable obligation to begin with.  Because the prior decree is unenforceable as to installments accruing after the parties' remarriage, the receiving spouse cannot have a vested right to those payments.  Here, the court awarded petitioner an arrearage for the payments that were due before the remarriage and respondent is not challenging that ruling.  Petitioner cannot claim a vested right in payments rendered unenforceable by the parties' remarriage.

Petitioner further contends that this state's interest in ensuring that children of broken marriages are adequately provided for is so strong that it justifies abrogating the usual rule that a prior dissolution decree may not be enforced after the parties remarry.  When divorced parties remarry, the general obligations to support one's family again apply.  See 
Parks
, 258 Ill. App. 3d at 483; 
Davis
, 68 Cal. 2d at 292, 437 P.2d at 503, 66 Cal. Rptr. at 15.  When parties remarry, they agree to look to each other for the support of themselves and their children.  Parties who remarry should not be placed in a different situation than parties who have not been previously married and divorced.

We are aware that in this case the parties were separated for much of their second marriage and thus the presumption that people living under the same roof will support each other and their children does not necessarily apply.  However, petitioner could have filed an action for dissolution or separate maintenance at any time.  Her failure to do so does not justify allowing her to invoke selected provisions of the prior decree.

The trial court's order setting the child support arrearage is affirmed.

Petitioner also contends that the trial court erred in denying her petition to require respondent to exercise his visitation with his children.  This, too, appears to be an issue of first impression in this state.

The Illinois Marriage and Dissolution of Marriage Act (the Act) provides that a "parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health."  750 ILCS 5/607(a) (West 1998).  However, petitioner cites no provision of the Act that authorizes a court to 
require
 the noncustodial parent to exercise visitation.  The dissolution of a marriage and related matters are entirely statutory in origin.  
Henry
, 156 Ill. 2d at 544.  Therefore, we are reluctant to read into the statute a remedy that the legislature did not specifically authorize.

Our research has not revealed any case addressing this precise issue.  In general, the Act requires the trial court to determine custody with regard to the best interests of the child.  750 ILCS 5/602(a) (West 1998).  Visitation is a form of custody.  
In re Marriage of Fields
, 283 Ill. App. 3d 894, 901 (1996).  At least one court has observed that visitation is primarily the right of the child and only incidentally that of the visiting parent.  
In re Marriage of Oswald
, 847 P.2d 251, 254 (Colo. App. 1993).  Visitation should not be used to penalize or reward parents for their conduct.  
In re Marriage of Solomon
, 84 Ill. App. 3d 901, 908 (1980).  

In spite of these admonitions, while some courts have upheld the rights of parents to enforce visitation with their children (see, 
e.g.
, 
In re Marriage of Marshall
, 278 Ill. App. 3d 1071 (1996)), we are aware of no case that has recognized a reciprocal right of children to enforce visitation with a parent.  The comments to the Uniform Marriage and Divorce Act, on which Illinois' Act is based, state, without elaboration, "Although the judge should never compel the noncustodial parent to visit the child, visitation rights should be arranged to an extent and in a fashion which suits the child's interest rather than the interest of either the custodial or noncustodial parent."  Uniform Marriage & Divorce Act §407, 9A U.L.A., Comment, at 398 (1998).

 Petitioner suggests that because the overarching goal of the Act's custody provisions is the best interests of the children and, as a general rule, children have an interest in maintaining a close relationship with both parents after a dissolution of marriage, we should interpret the Act as permitting a court to compel the noncustodial parent to attend visitations even if he or she is unwilling to do so.  We acknowledge that this argument has strong  appeal but we cannot accept it absent statutory authority.

First of all, a court simply cannot order a parent to love his or her children or to maintain a meaningful relationship with them.  We are not convinced that forcing the children to spend time with a parent who views the visit as a punishment or obligation would truly be in the children's best interests.  Any feelings of abandonment the children may have might actually be reinforced by the realization that their father (or mother) was seeing them only to avoid being jailed for contempt of court.

Petitioner acknowledges that "[n]o interpretation of the [Act] can force any person to be a good parent," but argues that forcing the absent parent to exercise visitation might eventually foster a relationship.  If a parent attends visitation with his children under compulsion, it might do more harm than good.

We acknowledge petitioner's contention that the trial court denied her petition for mandatory visitation because it believed it had no authority to make such an order.  Therefore, she would not have been able to present evidence.  (The record on appeal does not contain a transcript of the hearing at which the court denied the petition.  Therefore the reason for its ruling is unknown.)  Nevertheless, petitioner apparently did not make an offer of proof and on appeal does not refer to any specific facts to show that it would be particularly beneficial for the children to maintain a relationship with their father despite the latter's reluctance.  In any event, the trial court was correct in (presumably) holding that the statute does not authorize such an order.

In re J.C.
, 248 Ill. App. 3d 905 (1993), on which petitioner relies, is clearly distinguishable.  That case arose under the Juvenile Court Act of 1987 (705 ILCS 405/1--1 
et seq.
 (West 1998)) rather than the dissolution of marriage statute.  In 
J.C.
, both parents had essentially abandoned the minor and the mother sought to renounce her parental rights.  It appears that there was no reasonable chance that the minor could be adopted.  To avoid the minor spending his life in institutions or foster homes, the court ordered the mother to attend visitations.  However, before doing so, the court imposed numerous safeguards.  It terminated both parties' parental rights and appointed the administrator of the Department of Children and Family Services as the minor's guardian.  Visitations were to be supervised and the administrator had the power to suspend or terminate visitation at any time if he felt the minor's interests required it.  
J.C.
, 248 Ill. App. 3d at 907.  This was clearly a unique response to an unusual fact pattern, one which is not present here.  Further, it is not clear how, if at all, the safeguards prescribed by the court in 
J.C.
 could be put in place in this case.

It appears that petitioner's request for mandatory visitation may have been intended, at least in part, for her own benefit.  Her petition asked, in the alternative, that respondent be required to pay for day care when he did not exercise visitation.  Petitioner's concerns as a single mother in having some time away from her (now teenage) children and being able to afford day care when she is unable to be with them are not insubstantial.  However, the trial court accommodated those concerns by granting petitioner's alternative request for help with day care expenses.  We cannot conclude that the court erred by denying her request for the more drastic relief of requiring respondent to exercise his visitation.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.