**In re Denny L. ALTER, Debtor.**

**Denny L. Alter, Plaintiff,**

**v.**

**Illinois Department of Public Aid, Defendant.**

**Bankruptcy No. 02–84386.
Adversary No. 02–8260.**

United States Bankruptcy Court,
C.D. Illinois.

Nov. 10, 2003.

---

1. *See, e.g.,* §§ 706(b), 1307(c), 350(b), 330(a)(1) and (2), and 327(d).

Bruce A. Buckrop, Rock Island, IL, for Plaintiff.

Jeffrey S. McKinley, Asst. Attorney General, Rock Island, IL, for Defendant.

## *OPINION*

THOMAS L. PERKINS, Bankruptcy Judge.

This matter is before the Court on cross motions for summary judgment on the Complaint filed by Denny L. Alter, the Debtor (DEBTOR), against the Illinois Department of Public Aid (DEPARTMENT), to determine the dischargeability of a state court ordered child support obligation.

The facts are not in dispute. The DEBTOR married Carrie Alter on June 7, 1991. Shortly after their marriage, on July 10, 1991, Carrie gave birth to Donovan Alter. Because Donovan was born during the marriage, the DEBTOR is presumed to be his natural father.[1] The parties separated the following year and an order was entered in state court dissolution proceedings on September 7, 1993, ordering child support for Donovan in the amount of $32.00 per week. Beginning in

---

**1.** Section 5(a)(1) of the Illinois Parentage Act of 1984 (the Parentage Act), provides:

(a) A man is presumed to be the natural father of a child if:

(1) he and the child's natural mother are or have been married to each other, even though the marriage is or could be declared invalid, and the child is born or conceived during such marriage....

750 ILCS 45/5(a)(1).

December, 1992, and with the exception of a ten-month period in 1998, Donovan received public assistance from either the State of Illinois or the State of Iowa. For those time periods in which benefits were paid to Donovan's mother, the child support owed to her by the DEBTOR was assigned to the state providing the assistance.

Nearly a decade later, on February 28, 2002, pursuant to the Illinois Parentage Act of 1984, 750 ILCS 45/1 *et seq.*, the DEBTOR filed a petition in state court to declare the non-existence of a parent-child relationship between himself and Donovan, based on DNA testing establishing that he was not Donovan's father. On March 15, 2002, the state court entered an order declaring the DEBTOR not to be Donovan's father and directing both the DEBTOR and the DEPARTMENT to submit briefs on the DEBTOR'S oral motion to vacate the unpaid child support arrearage, which remained under advisement with the state court. The state court clarified its ruling that the DEBTOR'S obligation for child support terminated on February 28, 2002, and, on July 26, 2002, issued a ruling denying the DEBTOR'S motion to vacate the accrued, unpaid child support.

On September 27, 2002, the DEBTOR filed a Chapter 7 petition in bankruptcy. The DEBTOR listed the DEPARTMENT as holding a priority claim in the amount of $8,000.00 for "mistaken benefits." He also listed the Iowa Department of Revenue as holding an unsecured claim in the amount of $8,674.00, for 1993 taxes. The DEBTOR later amended his schedules to list both the DEPARTMENT and the

Iowa Department of Human Resources as holding unsecured claims for "mistaken benefits" in those same amounts.

The DEBTOR brought this adversary proceeding against the DEPARTMENT, seeking a determination that the debt is dischargeable.[2] In answer to the complaint, the DEPARTMENT contended that discharge of the DEBTOR'S accrued child support obligation would negate Section 666 of the Federal Child Support Enforcement Act, 42 U.S.C. § 666(a)(9), which requires states to prohibit retroactive modification of child support orders and would intrude upon the states' rights to mandate and enforce parental responsibility.[3]

Both the DEBTOR and the DEPARTMENT filed motions for summary judgment. According to the DEPARTMENT'S statement of facts, which was not contested by the DEBTOR, Donovan received cash assistance in Iowa during the following periods: December 15, 1992 through December 31, 1997; November 1, 1998 through February 28, 2001; and August 1, 2002 through August 1, 2003. Donovan received cash assistance from Illinois from March 1, 2001 through August 31, 2002. As of July 17, 2003, the amount due the State of Iowa is $7,297.71 and the amount due the DEPARTMENT is $1,376.00. The DEPARTMENT further asserts that no amount of the back child support is owed to Carrie.

In support of his motion, the DEBTOR relies on *In re White*, 253 B.R. 253 (Bankr. W.D.Ark.2000). In *White*, like the present case, the debtor sought a determination that his debt for unpaid child support ac-

---

**2.** A similar complaint was filed by the DEBTOR against the Iowa Department of Human Resources. A default judgment was entered on March 11, 2003, in that adversary proceeding, No. 02–8261, after the Defendant failed to file an answer.

**3.** Illinois' prohibition against retroactive modification of child support orders is found in Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/510(a).

cruing prior to a state court determination of non-paternity was dischargeable under Section 523(a)(5). Acknowledging the binding effect of the state court order holding the debtor liable for accrued child support, the bankruptcy court regarded that judgment as establishing only that the debt was in the nature of child support. Because the state court had also determined that the debtor was not the father of the children, and reasoning that Section 523(a)(5) applies only if the support is for "a child of the debtor," the bankruptcy court held that the debt was not nondischargeable under Section 523(a)(5).

The DEPARTMENT contends that the court's focus in *White* should have been upon the relationship that existed between the debtor and the child when the support was ordered and accrued, not at the time that the debtor challenged his liability. The DEPARTMENT relies on Section 7(b–5) of the Parentage Act which offers only prospective relief, providing that future support payments may be vacated when the presumed father has been determined not to be the father of the child. Accrued child support obligations cannot be attacked retroactively.

■ This Court need not determine whether it agrees with *White's* interpretation of Section 523(a)(5). Discharge of the DEPARTMENT'S debt is barred by Section 523(a)(18), which was added to the Bankruptcy Code by the Personal Respon-

sibility and Work Opportunity Reconciliation Act of 1996, and makes nondischargeable a debt

> (18) owed under State law to a State or municipality that is—
>> (A) in the nature of support, and
>> (B) enforceable under part D of title IV of the Social Security Act (42 U.S.C. 601 et seq.).

11 U.S.C. § 523(a)(18). In order to be excepted from discharge under this provision, the debt must be (1) owed under state law; (2) to a state or municipality; (3) enforceable under Part D of title IV of the Social Security Act; and (4) in the nature of support. *In re Leibowitz*, 218 B.R. 96 (Bankr.C.D.Cal.1998), *aff'd* 217 F.3d 799 (9th Cir.2000).

The first three requirements are easily met. First, the debt here is owed under state law and it is owed to the State of Illinois. Second, the type of debts that are typically enforceable under Title IV–D of the Social Security Act are support obligations owed pursuant to a dissolution decree or other order imposing a support obligation against a non-custodial parent.[4] *See, In re Spinks*, 233 B.R. 820 (Bankr. S.D.Ill.1999). The debt owed by the DEBTOR also meets that requirement.[5]

■ The remaining issue is whether the debt owing to the DEPARTMENT is one "in the nature of support" within the meaning of the statute.[6] The phrase "in

---

**4.** Part D of Title IV of the Social Security Act addresses "Child Support and Establishment of Paternity."

**5.** Section 608(a)(3) of the Social Security Act provides, in pertinent part:

A State to which a grant is made under Section 603 of this title shall require, as a condition of providing assistance to a family under the State program funded under this part, that a member of the family assign to the State any rights the family mem-

ber may have ... to support from any other person.... 42 U.S.C. Section 608(a)(3).

**6.** No assistance is to be gained from the Bankruptcy Code's definition of "debt for child support" as "a debt of a kind specified in section 523(a)(5) of this title for maintenance or support of a child of the debtor." 11 U.S.C. § 101(12A). As noted by *Collier's*, the term "debt for child support" does not appear anywhere in the Bankruptcy Code. 2 *Collier on Bankruptcy*, Par. 101.12A.

the nature of support" found in Section 523(a)(18) is much broader than Section 523(a)(5)'s exception for a debt "to a . . . child of the debtor, for . . . support of such . . . child." The DEBTOR does not dispute that the purpose of the 1993 child support order was to provide financial support for the benefit of Donovan. As such, the "nature" of the obligation was one of support. It is well established under Illinois law that each support payment is a vested right of the recipient on the date that it becomes due. *In re Marriage of Mitchell*, 319 Ill.App.3d 17, 253 Ill.Dec. 393, 745 N.E.2d 167 (Ill.App.2d Dist.2001); *In re Marriage of Hardy*, 191 Ill.App.3d 685, 138 Ill.Dec. 909, 548 N.E.2d 139 (Ill. App. 5th Dist.1989). As assignee of Carrie's right to child support, the DEPARTMENT stands in her stead, and the nature of the obligation remains unchanged. The subsequent determination that the DEBTOR is not Donovan's father does not work a transformation of the debt, nor does it alter in any way the DEPARTMENT'S right of reimbursement.

Section 523(a)(18) need not be examined in isolation, however. As part of the same law that enacted Section 523(a)(18) of the Bankruptcy Code, Section 656(b) was added to the Social Security Act. Essentially identical to its bankruptcy counterpart, Section 656(b), captioned "Nondischargeability" provides:

> A debt (as defined in section 101 of Title 11) owed under State law to a State (as defined in such section) or municipality (as defined in such section) that is in the nature of support and that is enforceable under this part is not released by a discharge in bankruptcy under Title 11.

42 U.S.C. § 656(b).[7] These two provisions, enacted together and nearly identical, should be read in *pari materia.* Consider-

ation of Section 656(b) with other provisions of Part D of the Social Security Act, leads to the conclusion that the debt owed the DEPARTMENT is nondischargeable. Specifically, Section 666(a)(5) requires states to implement procedures for contested paternity cases, including the issuance of a temporary support order pending a final determination upon a showing of paternity by clear and convincing evidence. That same section also requires states to prohibit retroactive modification of "any payment or installment of support under any child support order . . . on and after the date it is due." 42 U.S.C. § 666(a)(9)(C). Construing those provisions along with Section 656(b), it is clear that Congress intended that debts for child support cannot be retroactively modified and will be determined to be nondischargeable, notwithstanding any subsequent disproving of paternity.

Having determined that all four conditions of Section 523(a)(18) have been met, this Court holds that the debt owed to the DEPARTMENT in the amount of $1,376.00 is nondischargeable. In so ruling, the Court rejects the DEBTOR'S argument that equity is on his side. Notwithstanding modern society's declining morality, the institutions of marriage and *family have hardly been reduced to a* "name game," as suggested by the DEBTOR. The Parentage Act of 1984 embodies a strong public policy of mandating parental support of children. 750 ILCS 45/1.1. As Donovan's presumed father, the DEBTOR had a legal duty to support him, physically, mentally, emotionally and financially. *Id.* Although he had the opportunity, the DEBTOR did not deny paternity at the time of his divorce from Carrie, but assumed the responsibilities of support. Those duties only ended in 2002 when the

---

7. Some courts have held that Section 656(b) provides an independent basis for nondis-

chargeability. *See, In re Cervantes,* 219 F.3d 955 (9th Cir.2000).

state court determined that in fact he was not Donovan's natural father. Given the long-standing rule, of both federal and state origin, that child support awards cannot be retroactively undone, the DEBTOR'S characterization of the obligation owed to the DEPARTMENT as an ordinary debt, finds no support in the law. The federal and state interest in ensuring that children are provided for is paramount. The effect of the policy against retroactive modification of support orders is to place the burden squarely on the shoulders of non-custodial fathers who wish to challenge paternity to do so at the earliest opportunity. If the DEBTOR had disproved paternity at the time of the 1993 divorce, perhaps Donovan's biological father could have been identified and held financially responsible. In this Court's view, the governmental policy of holding fathers financially accountable until and unless they prove non-parentage is fair and equitable. The DEBTOR'S opportunity for a fresh start plays second fiddle to the DEPARTMENT'S right to collect its debt for support furnished to Donovan at a time when the DEBTOR was legally obligated but failed to do so.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the Debtor's debt to the Illinois Department of Public Aid for back child support in the amount of $1,376.00 is determined nondischargeable pursuant to 11 U.S.C. § 523(a)(18); Judgment is entered in favor of the Defendant, Illinois Department of Public Aid, and against the Plaintiff, Denny L. Alter.