**James Leo GREENE, Plaintiff,**

v.

**DISTRICT COURT OF POLK COUNTY, Defendant.**

No. 83–04.

Supreme Court of Iowa.

Dec. 21, 1983.

Rehearing Denied Jan. 19, 1984.

William H. Michelson, Des Moines, for plaintiff.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., for defendant.

SCHULTZ, Justice.

In this original certiorari action, plaintiff, James Leo Greene, challenges a district court order committing him to jail. This order enforced a previous contempt judgment and jail sentence entered against Greene for failure to pay child support. Confinement upon the sentence was withheld pending Greene's satisfaction of certain conditions, notably payment of a portion of the delinquent child support arrearage. The determinative issue is whether due process required the district court, prior to issuance of commitment, to hold another hearing to determine whether Greene was responsible for his failure to make the conditional payments. We hold that such hearing is required and sustain the writ.

On November 18, 1977, Greene was found in contempt of court for being delinquent in his child support payments. These obligations arose from a 1975 disso-

lution decree. Commitment was deferred subject to certain conditions which Greene never fully satisfied. In October 1980, the warrant was issued and then withdrawn subject to new conditions. · A certiorari action was filed with us. This action was untimely as to the October orders, and we declined to review the propriety of those orders at that time. *Greene v. Iowa District Court for Polk County,* 312 N.W.2d 915, 919–20 (Iowa 1981) (*Greene I*). On February 17, 1982, the district court entered another order that Greene approved as to form. This order again withheld commitment and imposed new conditions that were not fulfilled. After an application by the Friend of Court, the district court on December 8, 1982, in an ex parte proceeding, finally ordered the original commitment carried out. After Greene was jailed, his petition for writ of certiorari was granted and the jail sentence stayed during the pendency of this action.

In this action, Greene challenges the issuance of commitment asserting that (1) imprisonment for failing to comply with the conditional orders without a hearing violated due process; (2) punishment for contempt is unavailable for support arrearages assigned to the State; (3) imprisonment for failure to pay assigned arrearages is imprisonment for a debt in violation of Iowa Constitution Art. I, § 9; and (4) the district court lacked jurisdiction to jail him since he had purged himself by substantially complying with the 1977 conditional order or, alternatively, the delay in enforcing punishment rendered the order stale.

*I. Due process.* Defendant claims that he was denied due process when he was summarily jailed on December 8, 1982. He complains because the district court did not attempt to determine why he was in default again, nor did it give him any opportunity to be heard on this latest accusation. In anticipation of a claim that he had waived further notice or hearing before commitment could issue, he also contends the February conditional order was a nullity. We will not address the issue of waiver or nullity in view of our decision here.

■ We agree that Greene was denied due process when he was jailed without notice and an opportunity to explain why he had never satisfied the conditional orders allowing him to purge himself of contempt. Greene's situation is similar to that of the criminal defendant in *Bearden v. Georgia,* —— U.S. ——, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). There, Bearden was charged with two felonies. After he pled guilty to both charges, the trial court deferred proceedings and placed him on probation. As a condition of probation, Bearden was ordered to pay a fine and make restitution. Partial payment was required on the day of sentencing and the following day, with the balance due in the next four months. Although Bearden was able to borrow the money to make the initial payments, he ultimately was laid off from his job and unable to make the additional payments. *Id.* at ——, 103 S.Ct. at 2067, 76 L.Ed.2d at 226. Notified of his inability to pay, the trial court, after an evidentiary hearing, revoked his probation and sentenced him to prison for the remaining period of his initial probation. *Id.* at ——, 103 S.Ct. 2067–68, 76 L.Ed.2d at 226–27. The Supreme Court reversed and remanded for further proceedings. It reasoned that the initial decision to place Bearden on probation reflected a determination that the State's penological interest did not require imprisonment. Thus, the State thereafter could not imprison Bearden solely because he lacked the resources to pay the fine and restitution. *Id.* at ——, 103 S.Ct. at 2070–71, 76 L.Ed.2d at 230. Specifically, the court held that before Georgia can imprison Bearden for his failure to pay, it must determine either that he did not make a bona fide effort to pay or, if he did, that alternative methods of punishment would not adequately meet the State's penological interests. *Id.* at ——, 103 S.Ct. at 2074, 76 L.Ed.2d at 234. In so ruling, the court indicated that the reasons for nonpayment are of critical importance. It stated:

If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly

justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crimes. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.

*Id.* at ——, 103 S.Ct. at 2070–71, 76 L.Ed.2d at 233 (citations omitted).

■ We believe the legal procedures invoked and the factual circumstances presented here are analogous to those presented in *Bearden.* We have recognized that the jail sentence imposed for willful nonpayment of child support under Iowa Code section 598.23 makes this contempt procedure criminal in nature. *McNabb v. Osmundson*, 315 N.W.2d 9, 11 (Iowa 1982); *Lutz v. Darbyshire*, 297 N.W.2d 349, 353–54 (Iowa 1980). In 1977, the trial court determined that the interests of the State would be better served if confinement was deferred and Greene was required to make certain specified payments. Although there have been subsequent orders, no subsequent hearings have been held to determine whether reasonable efforts were made to pay the required amount. While *Bearden* was based on the fundamental fairness required by the Fourteenth Amendment, Greene's case is stronger since he was not given an opportunity for notice and hearing before imprisonment.

■ We believe notice and hearing in these circumstances is vital. Greene should have been given the opportunity to show either that the prescribed conditions had been fulfilled or that he had made a bona fide effort to pay but through no fault of his own was unable to comply with the conditional orders. In cases of a bona fide effort, the district court also must consider alternative procedures or dispositions other than imprisonment. For instance, the court could have extended the time for making the payments or considered the alternatives provided by Iowa Code section 598.23. Consequently, we hold that whenever the district court withholds commitment on an adjudication of contempt subject to certain conditions, due process requires notice and hearing before commitment can be ordered for failure to comply with these conditions. This holding in no way affects the district court's power to immediately confine an individual upon an adjudication of contempt for failure to make child support payments. We further hold that where commitment is withheld in contempt proceedings under section 598.23, a subsequent issue of commitment is not proper absent findings that the offending person is responsible for his failure to comply or that alternative procedures or dispositions are inadequate to meet the court's interest in punishment and deterrence.

■ *II. Contempt sentence after child support arrearages assigned to the State.* Greene next argues that the great weight of authority forbids punishment for contempt after child support payments stop accruing. He further claims that while unpaid arrearages assigned to the State may be collectible by garnishment or other normal methods, they cannot be enforced by the extraordinary and harsh method of contempt. We cannot agree.

■ The contempt power was exercised and sentence imposed against Greene in 1977 when child support was still accruing weekly and before an assignment had been made to the State. We held in *Greene I* that termination of accruing payments by Greene's remarriage to his ex-wife did not affect the rights of the Department of Social Services as an assignee, nor did it deprive the district court of subject matter jurisdiction to impose the previously ordered contempt sentence. 312 N.W.2d at

918. We see no reason to depart from that ruling. The issue in this action must be confined to the propriety of ordering commitment in December of 1982.

■ *III. Imprisonment for debt.* We also find no merit in Greene's claim that his imprisonment for assigned arrearages constitutes imprisonment for debt. We recently held that statutes which provide for a jail sentence after a contempt adjudication and as a means of enforcing obligations arising from dissolution decrees do not violate Art. I, § 9 of the Iowa Constitution. Specifically, we held that confinement for this purpose is not an imprisonment for debt. *In re Marriage of Lenger,* 336 N.W.2d 191, 193 (Iowa 1983). Although Greene makes several diverse points and arguments, they all narrow to the issue reached in *Lenger.* We do not care to reevaluate or change that result. A jail sentence under these circumstances does not violate Greene's state constitutional rights.

*IV. Substantial compliance with the conditions of the 1977 order and failure of the court to act promptly.* The 1977 district court order finding Greene in contempt withheld commitment subject to certain conditions. Specifically, Greene could purge himself of contempt if, for a period of one year, he paid his regular $50 weekly support payment plus $25 each week to apply on the arrearage. He also was required to turn over any federal and state tax refunds. Apparently, a lump sum payment of $305 made by him in that year represented his tax refund. Additionally, in that year, Greene paid $3260 of the required $3900 payment. The record indicates since that date Greene has only paid $350. Consequently Greene has never satisfied the conditions imposed for withholding commitment.

Nevertheless, Greene claims he substantially complied with the conditions and purged himself of contempt. Essentially, he claims that paying $3565 out of the required $4205 constitutes substantial compliance making punishment on the initial finding of contempt inappropriate. He cites no authority defining substantial compliance or allowing such compliance to satisfy the conditional order.

■ Even if the entire payment had been made prior to confinement, this would not have prevented a subsequent confinement for failure to make prompt payment. *Ogden v. Iowa District Court in and for Polk County,* 309 N.W.2d 401 (Iowa 1981). In *Ogden* the plaintiff, by the date of the second hearing, had paid the entire amount required as a condition for withholding mittimus. We held that this subsequent payment did not prohibit a subsequent imprisonment and stated: "This question is guided by section 598.22, The Code. The statute provides in relevant part that prompt payment of support shall be the essence of an order requiring such payment and that the court may punish for contempt regardless of whether the amounts in default are paid prior to the contempt hearing." *Id.* Thus, if full but tardy payment cannot forestall imprisonment on the previous adjudication of contempt, then less than full payment cannot serve to forestall imprisonment either. Of course our decision today has somewhat modified *Ogden.* In particular, an individual could not be jailed merely because he was tardy if he attempted to make timely payments and through no fault of his own failed. Conversely, if he had the ability to timely comply but willfully refused to do so, then our decision today would not bar imprisonment for tardiness.

■ This is not to say that the existence of payments is not relevant to the inquiry. On the authority of *Bearden,* we have provided in division I that fundamental fairness bars imprisonment of a person who has made sufficient bona fide efforts to comply with the conditions of release. Thus, the decision to order commitment must be made on the basis of bona fide effort rather than on the degree of compliance. While the existence of payments may serve as evidence of a bona fide effort, an individual's efforts in light of his peculiar situation are more important than the percentage of the total payments made.

Greene next calls attention to the long delay in enforcing the conditions in the 1977 contempt judgment. He points out that he was given a one-year period in which to purge himself of contempt. He insists that he was either purged or not purged as of November 22, 1978. Thus, it is unreasonable to jail him four years later. He also complains because the district court subsequently raised the amount of money he was required to pay to avoid commitment to jail.

We have no jurisdiction to entertain claims about interim orders imposed on Greene over 30 days prior to this action. *Greene I,* 312 N.W.2d at 919. We might add, however, that we do not condone or approve the four to five year delay. We believe this delay has caused a heavy burden to be placed on the district court timewise. Nonetheless, Greene has little to complain of since the delay was incurred for his benefit and kept him out of jail. Again, we are not faced with the issue of whether the district court had the authority to withhold mittimus pending Greene's compliance with prescribed conditions. *Id.* at 919–20.

Having considered all the arguments, we sustain the writ for the reasons provided in division I.

WRIT SUSTAINED.

All Justices concur except CARTER, J., who concurs in part and dissents in part.

CARTER, Justice (concurring in part and dissenting in part).

I concur in Divisions II, III, and IV of the majority opinion. With respect to Division I of that opinion, I agree that defendant's jailing was the product of a due process violation which requires that the writ be sustained, but otherwise dissent from the views which are therein expressed.

The order for commitment in the present case was issued ex parte on an unsworn application that the conditions previously imposed for withholding commitment had not been satisfied. Due process requires more than this. The plaintiff should have been accorded notice and opportunity to be heard on the issue of whether he failed to comply with the conditions under which his commitment to jail had previously been withheld.

I disagree, however, with the majority's conclusion that such a due process hearing requires a reexamination of plaintiff's ability to pay. Unlike traditional criminal sentencing, contempt proceedings involving failure to pay court-ordered support are primarily concerned with securing compliance with the court's order rather than punishment. It is therefore quite inaccurate to suggest that the withholding of an order of commitment following a finding of willful failure to pay court-ordered support constitutes a determination that the State's penological interest does not require imprisonment. The determination to withhold the commitment is more accurately described as a finding by the court that punishment is not required if, but only if, the specified arrearages are in fact paid within the time specified.

Because of the special nature of contempt proceedings to enforce domestic support decrees, I find that the principles underlying *Bearden v. Georgia,* —— U.S. ——, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) are inapplicable. The determination of alternative methods of punishing the defendant have already been fully considered by the court at the original hearing and should not have to be reexamined. A second hearing to determine ability to pay at the time of commitment is unnecessary and would in most cases amount to an undue burden on the court without noticeably improving the quality of justice.