# IN THE SUPREME COURT OF IOWA

No. 20–1686

Submitted December 15, 2021—Filed April 1, 2022

**STATE OF IOWA,**

    Appellee,

vs.

**TIFFANY SUE McCALLEY,**

    Appellant.

---

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

The defendant appeals her jail sentence and restitution order. **AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, McDonald, and Oxley, JJ., joined. Appel, J., filed an opinion concurring in part and dissenting in part. McDermott, J., filed an opinion concurring in part and dissenting in part, which Appel, J., joined.

Martha J. Lucey (argued), State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout (argued), Assistant Attorney General, for appellee.

**CHRISTENSEN, Chief Justice.**

The defendant seeks review of her sentence and restitution order after the district court imposed a six-day jail sentence and ordered her to pay restitution costs for operating a motor vehicle while her license is barred as a habitual offender. The defendant challenges the district court's discretion to sentence her to jail and the constitutionality of this sentence, claiming the district court improperly considered her struggling financial situation in imposing the jail sentence over her requested sentence of a fine or probation. The defendant also contends the district court erred by ordering restitution for court costs and court-appointed attorney fees under recent legislation codified in Iowa Code chapter 910 instead of applying the prior version of the statute that was in effect at the time of her offense. Alternatively, if the recent amendments to chapter 910 apply to her sentence, the defendant argues the amended statutory scheme violates various state and federal constitutional rights.

For the reasons discussed herein, we affirm the district court's judgment and sentence. The district court properly evaluated all of the facts before concluding the defendant's conduct, criminal history, and failure to rehabilitate warranted jail time instead of a fine or probation. Finally, the defendant waived any challenges to the district court's finding that she had a reasonable ability to pay court costs and court-appointed attorney fees.

**I. Background Facts and Proceedings.**

On January 13, 2020, Boone police officer Daniel Lynch observed Tiffany McCalley driving a green pickup truck. Officer Lynch was able to identify

McCalley as the driver by running a driver's license photo of her using his in-car computer. Dispatch reported McCalley had a barred Iowa license as a habitual offender. After McCalley pulled into a parking lot and entered a restaurant, Officer Lynch arrested her, and the State subsequently charged McCalley with operating a motor vehicle while license is barred as a habitual offender under Iowa Code sections 321.555 and 321.556 in violation of Iowa Code sections 321.560 and 321.561 (2020), an aggravated misdemeanor. McCalley entered a written guilty plea to the charge on October 29, and the district court held a sentencing hearing on December 8.

At the sentencing hearing, counsel for McCalley acknowledged McCalley "does have a little bit of criminal history," citing "an OWI and a couple of other driving charges that date back to 2007" in addition to her license being barred "due to nonpayment of fines and child support over the last couple of years." Nevertheless, counsel explained McCalley "had a lot going on in her personal life" and her two part-time jobs were in "industries [that] have been impacted by COVID so that has added some difficulty to her life at this time." McCalley requested "a suspended sentence with probation or community service or any other requirements the Court would deem appropriate instead of jail time."

The State sought a six-day jail sentence that could be served over four months and could be broken up over the course of weekends and 48-hour increments. In doing so, the State explained,

> First of all, I don't believe that a person can end up barred as a habitual offender totally based on nonpayment of fines. She may have started out suspended and then obtained additional convictions, and [her attorney] may be looking at the defendant's

criminal history, but when you look at her driving history, I show that she has three driving under suspensions just in 2018, so within the last two years she has three driving under suspensions. Although the state is not unsympathetic to some of the concerns raised by [her attorney], I am also a little skeptical of the Court imposing probation or additional fines for a person who habitually fails to pay them and fails to pay child support. It is just adding to the mountain of debt that she is not yet paying. In a case like this jail time does have a deterrent effect. I point out again to the defendant's driving history. She currently has five suspensions, indefinite suspensions for nonpayment of fines. I don't know what rehabilitative efforts are going to be served by a probationary period, and I also don't know what effect a fine is going to add to a person who can't afford to pay it. It seems the interest of justice or her own rehabilitation might be served by letting her sit in jail and think about the fact that she shouldn't be driving when she doesn't have a license.

Before imposing a sentence, the district court explained its rationale for the sentence, noting,

Ms. McCalley, on review of the file and her written arraignment and other matters, is 48 years of age. She has a high school education. Record today establishes that she has two part-time jobs. Clearly some effect on her economic status due to the COVID pandemic here in Iowa. She is going through a divorce. Recently suffered a fire. Ms. McCalley's driving history is poor. I think that is a charitable description of it. . . . The Court considers the purposes of disposition to rehabilitate defendant and prevent further offenses from her. The Court finds that probation would not materially or substantially offer or assist Ms. McCalley in rehabilitative efforts. The question here is her nonpayment of fines, child support that led to her suspension. Probation would incur additional economic impact to her, and I think on this sort of offense offer her very little in terms of rehabilitative efforts or protection of the community.

Thus, on December 8, the district court sentenced McCalley to a six-day jail sentence with credit for time served that she could serve in 48-hour minimum increments and would be given 120 days to serve. It suspended the minimum fine of $625 and fifteen percent surcharge.

At the conclusion of the sentencing hearing, the district court asked whether "Ms. McCalley [would] like to address reasonable ability to pay category B costs today or reserve that for a later date?" McCalley opted to reserve that discussion for a later date, leading the district court to declare, "Ms. McCalley does have the reasonable ability to pay Category B costs as she does hold two part-time jobs for the determination that may be made when Ms. McCalley files a written application and financial affidavit for further determination on her reasonable ability to pay." The district court determined the costs of McCalley's category "B" restitution amounted to $680.54. McCalley never challenged this conclusion or requested a determination of her reasonable ability to pay before filing her notice of appeal concerning her sentence, which we retained. The parties agree McCalley established "good cause," or "[a] legally sufficient reason," for the appeal under Iowa Code section 814.6(1)(*a*)(3). *State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020) (alteration in original).

## II. Standard of Review.

We review sentences imposed in a criminal case for correction of errors at law. *Id.* at 103. "We afford sentencing judges a significant amount of latitude because of the 'discretionary nature of judging and the source of the respect afforded by the appellate process.' " *State v. Fetner*, 959 N.W.2d 129, 133 (Iowa 2021) (quoting *State v. Boldon*, 954 N.W.2d 62, 73 (Iowa 2021)). Sentencing decisions that fall within the statutory limits are "cloaked with a strong presumption in [their] favor." *Id.* at 134 (quoting *Boldon*, 954 N.W.2d at 73).

Absent "an abuse of discretion or some defect in the sentencing procedure," we will not reverse a sentence. *Damme*, 944 N.W.2d at 103 (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)). "An abuse of discretion occurs when the court exercises its discretion on grounds or for reasons that are clearly untenable or unreasonable. We may find grounds untenable when based on an erroneous application of the law." *State v. Thompson*, 951 N.W.2d 1, 4 (Iowa 2020) (quoting *State v. Covel*, 925 N.W.2d 183, 187 (Iowa 2019)). We also review restitution orders for correction of errors at law. *Id.* We review constitutional challenges de novo. *State v. Treptow*, 960 N.W.2d 98, 107 (Iowa 2021).

**III. Analysis.**

McCalley raises numerous challenges on appeal. She argues the district court abused its discretion and violated her due process and equal protection rights when it imposed a jail sentence. Next, McCalley maintains the district court should have applied the statutory scheme governing restitution in effect at the time of her offense instead of applying the amended statutory scheme of Iowa Code chapter 910 that was in effect at the time of her sentencing. Alternatively, if we determine the amended statutory scheme applied to McCalley's restitution obligation, McCalley contends Iowa Code section 910.2A (2021) is unconstitutional.

**A. McCalley's Six-Day Jail Sentence.** McCalley claims the district court abused its discretion when it imposed a six-day jail sentence because it "improperly considered McCalley's poverty as a factor supporting incarceration."

She also maintains the district court "violated her right to equal protection and due process in imposing a jail sentence because McCalley did not have the financial means to pay a fine."

1. *Whether the district court abused its discretion by imposing a six-day jail sentence.* Because McCalley pleaded guilty to an aggravated misdemeanor, the district court had the discretion to sentence her to a maximum term of imprisonment of two years and a fine between $625 and $6,250 or to impose a suspended sentence. *See* Iowa Code § 903.1(2) (2019); *id.* § 907.3. Thus, the district court's six-day jail sentence with the minimum fine suspended was within the statutory range of permissible sentences and is "cloaked with a strong presumption in its favor." *Fetner*, 959 N.W.2d at 134 (quoting *Boldon*, 954 N.W.2d at 73). "Our task on appeal is not to second-guess the sentencing court's decision." *Damme*, 944 N.W.2d at 106. Yet, resentencing is required if the district court relied on an improper consideration at sentencing, even if the consideration was merely secondary. *Id.*

In reaching a sentencing decision, the district court must determine which legally authorized sentence for the offense "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. This requires the district court to weigh multiple factors, "including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform." *Damme*, 944 N.W.2d at 106 (quoting *Formaro*, 638 N.W.2d at 725). The district court also must "consider the

defendant's prior record of convictions or deferred judgments, employment status, family circumstances, and any other relevant factors." *Formaro*, 638 N.W.2d at 725.

To overcome the presumption in favor of the sentence in this case, McCalley must affirmatively demonstrate that the district court relied on an improper factor. *Damme*, 944 N.W.2d at 106. Here, McCalley contends the district court erred by improperly considering her "poverty as a factor supporting incarceration." This argument mischaracterizes the district court's statements at sentencing.

> Specifically, the district court explained,

> The Court considers the purposes of disposition to rehabilitate defendant and prevent further offenses from her. The Court finds that probation would not materially or substantially offer or assist Ms. McCalley in rehabilitative efforts. The question here is her nonpayment of fines, child support that led to her suspension. Probation would incur additional economic impact to her, and I think on this sort of offense offer her very little in terms of rehabilitative efforts or protection of the community. The Court therefore imposes a six-day jail sentence.

The district court did not sentence McCalley to a six-day jail term because of her inability to pay a fine. Instead, it sentenced her to a six-day jail term because imposing fines in the past had no impact on McCalley's behavior. McCalley had three separate driving-while-suspended convictions in 2018 alone. Her attorney at sentencing acknowledged McCalley "has had the license issues" due to her "nonpayment of fines and child support." As the State noted in advocating for jail time, McCalley "has five suspensions, indefinite suspensions [of her license] for nonpayment of fines." The district court's consideration of

McCalley's response to previous fines and her financial problems adequately examined whether McCalley's requested sentence would provide McCalley with the "maximum opportunity for . . . the rehabilitation of the defendant, and for the protection of the community from further offenses by [McCalley.]" Iowa Code § 901.5.

As the old saying goes, "[i]nsanity is doing the same thing over and over again and expecting a different result." *Kidwell v. Ruby IV, L.L.C.*, No. 18–02052, 2020 WL 6391260, at *8 (E.D. La. Nov. 2, 2020) ("The old saying 'insanity is doing the same thing over and over again and expecting a different result' is commonly mis-attributed to Albert Einstein, which is fine because I don't have to be Einstein to know what a bad idea it would be to allow Defendants to continue playing games with the rules, the Court, and their opponents without consequences."). It was not unreasonable for the district court to conclude that imposing probation or fines instead of jail time would not deter McCalley from driving illegally or rehabilitate her because she has proven as much in the past. The district court's explanation for its sentencing decision was thorough and shows the district court evaluated all of the facts before ultimately concluding that McCalley's conduct, criminal history, and failure to rehabilitate despite numerous opportunities outweighed any mitigating factors. McCalley's jail sentence was the result of her conduct, not her financial status. Therefore, the district court had a justifiable basis for sentencing McCalley to a six-day jail sentence to be served in a minimum of 48-hour increments over 120 days and properly exercised its discretion by doing so.

2. *Whether the jail sentence violated McCalley's equal protection and due process rights.* McCalley maintains the district court violated her right to equal protection and due process in imposing a jail sentence because she did not have the ability to pay a fine. "Due process and equal protection principles converge in the Court's analysis in these cases." *Bearden v. Georgia*, 461 U.S. 660, 665 (1983). The fairness of relations between the state and the criminal defendant invokes due process considerations, while "the question [of] whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants" invokes equal protection considerations. *Id.* Both our court and the United States Supreme Court have concluded that it is unconstitutional for the state to "impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Id.* at 664–65 (quoting *Tate v. Short*, 401 U.S. 395, 398 (1971)); *State v. Snyder*, 203 N.W.2d 280, 290–91 (Iowa 1972). Nevertheless, there are "recognized limits on the principle of protecting indigents in the criminal justice system." *Bearden*, 461 U.S. at 664.

As the Supreme Court has made clear, "nothing . . . precludes imprisonment for willful refusal to pay a fine or court costs." *Williams v. Illinois*, 399 U.S. 235, 242 n.19 (1970). For example, in *Bearden v. Georgia*, the Supreme Court concluded the state is "justified in revoking probation and using imprisonment as an appropriate penalty for the offense" in the case of a probationer who fails "to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution." 461 U.S. at 668. It

explained this failure "may reflect an insufficient concern for paying the debt he owes to society for his crime." *Id.* Overall, poverty does not immunize an individual from punishment, and nothing "precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law" if the judge has considered "the wide range of factors underlying the exercise of [their] sentencing function." *Id.* at 670 (quoting *Williams*, 399 U.S. at 243).

Time and again, McCalley has disregarded the obligations she has to society for her crimes. A sentencing court is free to imprison an individual if the sentencing court determines that alternatives to imprisonment are inadequate "in a particular situation to meet the State's interest in punishment and deterrence." *Id.* at 672. As we explained above, this is precisely what the district court did in this case by considering all of the relevant circumstances and concluding alternatives to a jail sentence were inadequate to meet the State's goals of rehabilitation and deterrence. *See* Iowa Code § 901.5. Consequently, the sentence does not violate McCalley's due process or equal protection rights.

**B. McCalley's Ability to Pay Restitution for Court Costs and Court-Appointed Attorney Fees.** McCalley challenges the district court's decision to sentence her to category "B" restitution costs—court costs and court-appointed attorney fees—under the amended version of Iowa Code chapter 910 that went into effect on June 25, 2020, instead of the 2019 version of chapter 910 that was in effect at the time she committed her offense. A defendant sentenced on or after June 25, 2020, is subject to the requirements of S.F. 457, 2020 Iowa Acts ch. 1074, §§ 65–83, which are codified in Iowa Code chapter 910 (2021). *See*

*State v. Dessinger*, 958 N.W.2d 590, 606 (Iowa 2021); *State v. Holmes*, 958 N.W.2d 545, 548 (Iowa 2021); *State v. Hawk*, 952 N.W.2d 314, 316 (Iowa 2020). Under this statutory scheme, "[a]n offender is presumed to have the reasonable ability to make restitution payments for the full amount of category 'B' restitution," Iowa Code § 910.2A(1), and the statute places the burden on offenders requesting a court determination of the amount of category "B" restitution they are reasonably able to make toward paying the full amount of that restitution. *Id.* § 910.2A(2). If the offender makes this request,

> the court shall hold a hearing and make such a determination, subject to the following provisions:
>
> *a.* To obtain relief at such a hearing, the offender must affirmatively prove by a preponderance of the evidence that the offender is unable to reasonably make payments toward the full amount of category "B" restitution.
>
> *b.* The offender must furnish the prosecuting attorney and sentencing court with a completed financial affidavit. Failure to furnish a completed financial affidavit waives any claim regarding the offender's reasonable ability to pay.
>
> *c.* The prosecuting attorney, the attorney for the defendant, and the court shall be permitted to question the offender regarding the offender's reasonable ability to pay.
>
> *d.* Based on the evidence offered at the hearing, including but not limited to the financial affidavit, the court shall determine the amount of category "B" restitution the offender is reasonably able to make payments toward, and order the offender to make payments toward that amount.

*Id.*

If an offender does not make a timely request for the court to determine their reasonable ability to pay, the district court "shall order the offender to pay the full amount of category 'B' restitution." *Id.* § 910.2A(3)(*a*). "An offender's

failure to request a determination pursuant to this section waives all future claims regarding the offender's reasonable ability to pay" unless an offender who is on probation, parole, or incarcerated petitions the district court to modify the restitution plan. *Id.* § 910.2A(3)(*b*); *see also id.* § 910.7. By failing to avail herself of multiple opportunities to timely request a determination on her ability to pay before filing this appeal, McCalley waived her claims and we cannot address them on direct appeal.

McCalley specifically acknowledged in her signed petition to plead guilty, which she filed after the changes to Iowa's restitution scheme went into effect, that she "may be assessed restitution" for category "B" restitution. The petition declared,

> With respect to Category B restitution items, I may request the court to determine whether I have the reasonable ability to pay the full amount of those items. If I do not request the court to make that determination, the court will presume I have the ability to pay the full amount of Category B restitution and will order me to do so. . . . If I do not make this request and/or I do not file a current financial affidavit, I will waive any claim regarding my ability to pay.

When the district court asked McCalley at sentencing whether she would "like to address reasonable ability to pay category B costs today or reserve that for a later date," McCalley opted to "reserve that for a later date." She never did raise the issue before the district court. Any hardship McCalley experienced due to the district court's application of the amended legislative scheme resulted from her own failure to utilize the procedures available to her. Consequently, we will not address McCalley's various constitutional challenges to the district court's application of chapter 910 to her sentence.

**IV. Conclusion.**

We affirm McCalley's sentence for the aforementioned reasons.

**AFFIRMED.**

Christensen, C.J., and Waterman, Mansfield, McDonald, and Oxley, JJ., join this opinion. Appel, J., files an opinion concurring in part and dissenting in part. McDermott, J., files an opinion concurring in part and dissenting in part, in which Appel, J., joins.

**APPEL, Justice (concurring in part and dissenting in part).**

The imposition of legal financial obligations on persons convicted of a crime is one of the most troubling issues facing our criminal justice system today. No one doubts that when a person convicted of a crime has the means to pay, the legislature may impose a charge on the defendant for certain types of costs arising from the defendant's criminal conduct.

Yet, the power to impose legal financial obligations arising from criminal conduct is not unlimited. In particular, it is of cardinal importance that a de facto debtor's prison does not arise from imposing restitution on those without the reasonable means to pay the obligation. In the past, the Iowa criminal justice system has imposed hundreds of millions of dollars of fines and restitution on criminal defendants with those amounts being almost totally uncollectable.

To many of us, a restitution obligation of a relatively small amount may seem like a minor inconvenience that does not require careful judicial attention. But unthinking minimization of the burdens of legal financial obligations on persons of low economic status is shortsighted and unjustified. A restitution obligation of a few hundred dollars may lead to cascading consequences when a criminal defendant serves more time in jail for failure to meet restitution obligations than for the underlying crimes. *See* Dana A. Waterman, Note, *A Defendant's Ability to Pay: The Key to Unlocking the Door of Restitution Debt,* 106 Iowa L. Rev. 455, 458 (2020) (noting that "[f]ailure to consider a defendant's ability to pay wastes judicial resources and impedes rehabilitation by placing

defendants in a cycle of incarceration and burdening them with debt that can never be repaid"). Although the exact number is not known, it has been estimated that roughly a quarter of the incarcerated population in the United States is detained due to a failure to pay their legal financial obligations. *See* Cortney E. Lollar, *Eliminating the Criminal Debt Exception for Debtors' Prisons*, 98 N.C. L. Rev. 427, 428 at n.2 (2020) [hereinafter Lollar].

In recent years, a large body of literature has emerged highly critical of efforts to "fundraise" for government in a fashion that treats individuals as a source of government revenue. *See* Judith Resnik & David Marcus, *Inability to Pay: Court Debt Circa 2020*, 98 N.C. L. Rev. 363, 363 (2020). Efforts to raise funds from criminal defendants have been criticized as subordinating marginal low-wage earners, who are disproportionately members of communities of color. *See* Lollar, 98 N.C. L. Rev. at 433; Neil L. Sobol, *Charging the Poor: Criminal Justice Debt & Modern-Day Debtors' Prisons*, 75 Md. L. Rev. 486, 516–21 (2016) (asserting that monetary obligations imposed on criminal defendants discriminate against the poor and minorities, create distrust in the system, and trap individuals in endless poverty cycles).

In my view, in this case, and in every restitution case, we must be cognizant of the potential havoc that can arise from the imposition of legal financial obligations on those that are truly unable to pay. In other words, courts must recognize the potential damage to individuals and their families and to the reputation of the criminal justice system generally that arises from the proverbial effort to squeeze blood out of a turnip. *See generally* Jack Furness, Note, *Willful*

*Blindness: Challenging Inadequate Ability to Pay Hearings Through Strategic Litigation and Legislative Reforms*, 52 Colum. Hum. Rts. L. Rev. 957, 962–63 (2021) (discussing the problem of having no clear procedure for judges to determine willful nonpayment); Christopher D. Hampson, *The New American Debtors' Prisons*, 44 Am. J. Crim. L. 1, 47 (2017) (characterizing imprisonment for debt as "rampant").

Consistent with the above observations, I agree with the thorough and sensitive opinion of Justice McDermott on the issue of the jail sentence imposed on Tiffany McCalley.

On the remaining substantive issues, there is, in my view, a question of preservation. With respect to the due process and right-to-counsel claims, McCalley has not preserved the issues. These important constitutional claims do not challenge the power of the court to impose a certain punishment and thus amount to an illegal sentence. *See State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009) (holding challenge to an illegal sentence may be raised at any time).

McCalley's claim that the fine involved is so excessive that the court lacks the power to impose it likely amounts to an illegal sentence that can be challenged at any time. *Id.* But here, restitution under Iowa Code chapter 910.2A (2021) in this case was not imposed in part to punish the defendant as in *State v. Izzolena*, 609 N.W.2d 541, 561 (Iowa 2000) (en banc) (linking excessive fines analysis to punishment). *See also Austin v. United States*, 509 U.S. 602, 609–10 (1993) (noting the Excessive Fines Clause was meant to limit the government's power to extract payments as punishment). As a result, the excessive fines

clauses of the Iowa and United States Constitutions are not implicated. That does not mean an order for restitution for costs cannot be attacked as excessive on other legal grounds, including lack of substantial evidence to support the amount, the ability of the defendant to pay, or other substantive or procedural defects. Here, the question of restitution in this case for costs is a purely civil matter not implicating the excessive fines concept. As a result, I agree with the result of the majority on the remaining issues in this case.

**McDERMOTT, Justice (concurring in part and dissenting in part).**

To say that our criminal justice system should be grounded on the principle that people are punished for their behavior and not their poverty is by now so routinely proclaimed that it borders on a stock applause line. Equal treatment before the law, regardless of a person's wealth, rightfully ranks among the highest principles in our judicial system. It appears even in the final words of the oath to which every Iowa judge and justice solemnly swears: to "administer justice according to the law, equally to the rich and the poor." Iowa Code § 63.6 (2021). Yet uttering words affirming this lofty principle is easy; ensuring it in practice requires vigilance.

When a court determines that a fine is an appropriate or adequate penalty for a defendant's crime, the law is clear that the court may not thereafter sentence the defendant to jail solely because she lacks the resources to pay it. *Bearden v. Georgia,* 461 U.S. 660, 668–69 (1983). In this case, both the district court and prosecutor suggested that probation might well have been a sufficient penalty for Tiffany McCalley's driving-related offenses. But the court imprisoned her, focusing on her prior failures to pay fines and child support. I respectfully dissent because the district court, in my view, skipped a step in the required analysis in evaluating McCalley's ability (or more accurately, *inability*) to pay a fine before sentencing her to imprisonment instead of probation.

Some exposition about the events giving rise to McCalley's criminal conviction and sentence in this case is necessary. In June 2018, McCalley's

license was suspended for failing to pay child support. Her license remained suspended for about a month, but during the next two months she drove and ultimately was convicted of speeding, driving with an expired license, and driving without a license. She qualified as a "habitual violator," which resulted in another license suspension, this time for 120 days. She again drove during that period and was convicted of driving while suspended. She received another ninety-day license suspension for failure to pay a fine. Just before that suspension ended, her license was separately suspended for nonpayment of child support. While suspended for not paying her child support, she drove again, was caught, and was convicted of driving while suspended. These accumulating convictions qualified her as a "habitual offender," which came with a two-year bar on her license. While this bar was in place, a police officer saw McCalley driving and charged her with driving while barred as a habitual offender, an aggravated misdemeanor.

The sentence for her conviction on this charge gives rise to this appeal. Except for the one speeding ticket, every conviction in the recitation above resulted from McCalley's license being suspended either for failing to pay child support or for failing to pay a fine and then driving during the period of restriction.

A line of United States Supreme Court cases decided under the Equal Protection and Due Process Clauses of the United States Constitution states that when defendants are unable to pay their criminal fines, courts must first determine that no alternative method would accomplish the goals of sentencing

before imposing a sentence of imprisonment. In *Williams v. Illinois*, the district court sentenced the defendant to a statutory-maximum term of imprisonment of one year, a $500 fine, and $5 in costs. 399 U.S. 235, 236 (1970). If Williams was in default at the end of his prison term, he would remain in prison until he could "work off" the debt at a rate of $5 a day. *Id.* He failed to pay his fine by the end of his prison term and ultimately spent 101 days beyond the statutory maximum in prison. *Id.* at 237. The Court vacated the judgment, holding it violated equal protection as "an impermissible discrimination that rests on ability to pay" because the statutory maximum applied to defendants who could pay the fine but not to those who couldn't. *Id.* at 241–42; *see also Tate v. Short*, 401 U.S. 395, 399 (1971) (invalidating a sentence on equal protection grounds where a defendant was unable to pay a fine, for an offense punishable by fine alone, and was sentenced to jail to work off the fine at a rate of $5 a day).

In *Bearden v. Georgia*, the defendant pleaded guilty to two felonies, and the court placed him on probation. 461 U.S. at 662. As a condition of probation, the trial court ordered Bearden to pay a $500 fine and $250 in restitution, with two initial payments and the balance paid in full within four months. *Id.* Bearden was able to borrow money for two initial payments, but during the probation period he was laid off from his job and unable to make any additional payments. *Id.* at 662–63. The trial court revoked his probation and sentenced him to prison for the rest of the probationary period. *Id.* at 663. Justice O'Connor, writing for the Court, stated that both equal protection and due process protections prevented the district court from simply imprisoning Bearden for failing to pay

the fines. *Id.* at 665. "[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.* at 667–68.

The Court distinguished an *unwillingness* to pay from an *inability* to pay in these situations to determine whether imprisonment is appropriate. *Id.* at 668. Where the defendant "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority." *Id.* at 672. On the other hand, where the defendant "could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment." *Id.* According to the Court, only if these "alternate measures" of punishment fail to meet the court's sentencing objectives may the court then imprison a defendant who "has made sufficient bona fide efforts to pay." *Id.*

A year after *Bearden,* our own court in *Greene v. District Court of Polk County* adopted the *Bearden* reasoning to analyze the constitutionality of a jail sentence imposed for willful nonpayment of child support (which is a contempt procedure "criminal in nature" under Iowa law). 342 N.W.2d 818, 820–21 (Iowa 1983) (en banc). We held that Greene should have been given an opportunity to show that he'd made "a bona fide effort to pay but through no fault of his own" couldn't pay. *Id.* If he could show such a bona fide effort, the district court was required to "consider alternative procedures or dispositions other than imprisonment" to satisfy the court's penalogical interests for the contempt. *Id.*

at 821. We held that Greene had been denied due process when the court jailed him for contempt after nonpayment of child support without such a finding. *Id.*

At the sentencing hearing in this case, McCalley's lawyer requested probation or community service instead of imprisonment. She enumerated McCalley's financial struggles: her license had been suspended because she'd failed to pay her fines; she was in the middle of a divorce; she'd lost her home in a fire; and although she held down two part-time jobs, both jobs (one as a cosmetologist, one at a restaurant) were in industries severely affected by the COVID-19 pandemic.

The prosecutor responded:

> Although the state is not unsympathetic to some of the concerns raised by [McCalley's lawyer], I am also a little skeptical of the Court imposing probation or additional fines for a person who habitually fails to pay them and fails to pay child support. It is just adding to the mountain of debt that she is not yet paying. In a case like this jail time does have a deterrent effect. I point out again to the defendant's driving history. She currently has five suspensions, indefinite suspensions for nonpayment of fines. I don't know what rehabilitative efforts are going to be served by a probationary period, and I also don't know what effect a fine is going to add to a person who can't afford to pay it. It seems the interest of justice or her own rehabilitation might be served by letting her sit in jail and think about the fact that she shouldn't be driving when she doesn't have a license.

The prosecutor then requested a jail sentence of six days.

The district court, after summarizing the arguments of the parties, explained its rationale for its sentence:

> The Court considers the purposes of disposition to rehabilitate defendant and prevent further offenses from her. The Court finds that probation would not materially or substantially offer or assist Ms. McCalley in rehabilitative efforts. The question here is her nonpayment of fines, child support that led to her suspension.

> Probation would incur additional economic impact to her, and I think on this sort of offense offer her very little in terms of rehabilitative efforts or protection of the community. The Court therefore imposes a six-day jail sentence.

As for the fine and surcharge associated with the convictions, the district court continued: "Given the statements and evidence before the Court, the Court does suspend the minimum fine of $625 and 15 percent surcharge."

Both the prosecutor and the district court appear to have considered probation and a fine an "appropriate and adequate penalty" for this type of conviction. *Bearden*, 461 U.S. at 667–68. The prosecutor never dismissed them as unwarranted but rather said that he was "a little skeptical of the Court imposing probation or additional fines for a person who habitually fails to pay them and fails to pay child support" because "[i]t is just adding to the mountain of debt she is not yet paying." These statements, in stark fashion, address the appropriateness of McCalley's potential sentence based on her financial resources. The prosecutor directly urges against probation based on McCalley's inability to pay: "I don't know what rehabilitative efforts are going to be served by a probationary period, and I also don't know what effect a fine is going to add to a person who can't afford to pay it."

The district court crystallizes the issue by announcing its view as to the key determination: "The question here is her nonpayment of fines [and] child support that led to her suspension." The court reasons that "[p]robation would incur additional economic impact to her, and I think on this sort of offense offer her very little in terms of rehabilitative efforts or protection of the community." Because, in the court's view, McCalley's offenses stemmed from failures to pay,

the court decided against probation based on its risk of further impoverishing McCalley and because "on this sort offense" (one based on "nonpayment of fines [and] child support") it would offer little for "rehabilitation efforts or protection of the community."[1]

Applying the *Bearden* procedures that we similarly applied in *Greene*, the district court should have considered whether McCalley had made "a bona fide effort" to pay the fines and child support that led to her convictions in determining whether probation or another sentence option, such as community service, should be imposed. *Greene*, 342 N.W.2d at 820–21. Under *Greene*, if the court found that McCalley had made a bona fide effort to pay the fines, the district court was required to consider alternative procedures or dispositions other than imprisonment to satisfy the court's penalogical interests. *Id.* at 821.

A defendant who *willfully refuses* to pay fines has arguably invited the consequences of that choice, and sentencing her to incarceration in such a case wouldn't offend basic notions of justice. But the related principle is also true that a defendant unable to pay fines despite bona fide efforts to acquire the resources to do so has *not* willfully refused to pay and thus has not elected more extreme consequences. A policy that permits sentencing those who are *unable* to pay the same as those who are *unwilling* to pay would permit, in these circumstances,

---

[1]The district court doesn't elaborate on the community protection needs associated with McCalley's convictions. As the court noted, and as described earlier in this dissent, McCalley's license had been suspended based on her failure to pay fines or child support. She wasn't suspended for unsafe driving or other infractions that would seem to make her a danger to the community when behind the wheel.

disparate treatment of people with means and people without in violation of their constitutional rights. *Id.* at 820–21.

I concur in the majority's holding that the defendant waived a challenge to her reasonable ability to pay category "B" restitution and join in Part III.B of the opinion. But I dissent from Part III.A and would vacate McCalley's sentence and remand for resentencing for a determination on whether her failure to pay was voluntary or occurred despite sufficient bona fide efforts to acquire the resources to do so.

Appel, J., joins this concurrence in part and dissent in part.